206 P.2d 1145

CAMPBELL et al. v. DOHERTY et al.

No. 5150.

Supreme Court of New Mexico.

May 6, 1949.

On Rehearing June 8, 1949.

James L. Briscoe, of Tucumcari, for appellants.

C. C. Davidson, of Tucumcari, for appellees.

BRICE, Chief Justice.

This suit was brought by appellees to enforce specific performance of a contract for the sale and purchase of real estate. The defense was that the title offered was not marketable.

The trial court made findings of fact in substance as follows:

On the 22nd day of August 1947 the plaintiffs Campbell and Campbell were seized of the property in suit. On the same day they entered into a contract of sale and purchase with defendants wherein defendants agreed to pay therefor $5581.31. There was at the time a mortgage against this property in favor of the Tucumcari Federal Savings & Loan Association in the sum of $3581.31, which it was agreed should be assumed by the defendants as part of the consideration, leaving a balance of $2000 which defendants agreed to pay in cash. The plaintiffs agreed to furnish a good and merchantable title "abstract and deed to said property" to be held in escrow by the Devor Agency; and the defendants agreed to pay $2000 in cash to the Devor Agency to be held in escrow pending the delivery of said abstract and deed. On the 2nd day of December, 1947, plaintiffs caused to be delivered to defendants an abstract of title to the property in suit.

The plaintiffs have performed all of the terms and conditions of the contract between plaintiffs and defendants, and the defendants have refused to authorize the Devor Agency to deliver the sum of $2000 held in escrow by it, to the plaintiffs.

The trial court's finding of fact No. 6 is as follows:

"That the defendants deny that said title is marketable and collaterally attack the sufficiency of Cause No. 8504 in the District Court of Quay County, New Mexico, to prove said title, but neither allege nor prove wherein said Cause No. 8504 is defective."

The following facts were stipulated:

"The plaintiffs in order to clarify the issue in the subject case and to relieve the court of the necessity of examining the abstract of title throughout, submit the following statement:

"The title to the Lot 4 in Block 13 in the Barnes Addition to the city of Tucumcari was vested in Scott Hankins on the 24th day of October, 1922.

"On the 7th day of December, 1936, a tax sale certificate was issued and on the 11th day of July, 1938, was assigned to George B. Taylor, to whom a tax deed was issued on the 16th day of December, 1938.

"No action has been filed to set aside said tax deed.

"On February 23, 1942, George B. Taylor who acquired the said tax deed, conveyed the said premises to C. M. Stanfill and by mesne conveyances from the devisee

under the will of C. M. Stanfill, the title to said premises became vested in the plaintiffs."

"1. That the property involved in this suit was assessed on the tax roll of Quay County for the year 1936 to Miss Scotty Hankins, and her address given on such tax rolls was 841 Bath Avenue, Ashland, Ky.

"2. That for the year 1937 this property was assessed on the tax roll of Quay County to Scotty Hankins, and her address given on such tax roll was 841 Bath Avenue, Ashland, Ky.

"3. That for the year 1938 this property was assessed on the tax roll of Quay County to Scottie Hankins, and her address given on such tax roll was 841 Bath Avenue, Ashland, Ky."

The court concluded that specific performance should be enforced and entered a decree accordingly.

At the termination of the trial of this case the trial court filed a memorandum decision in words and figures as follows:

"The defendants admit the execution of a contract and allege that the plaintiffs have failed to comply with the provisions of said contract in that they have failed to convey a merchantable title. The issue constitutes a collateral attack upon that certain decree rendered by this court in cause No. 8504 on the civil docket, on October 17th, 1946.

"In order to successfully make a collateral attack upon that judgment in this case, the defendants must necessarily show that the judgment rendered was void. Further, when a collateral attack is made on a judgment of a court of general jurisdiction, facts must be alleged and proved which show a want of jurisdiction and which will justify the trial court in determining the matter.

"In this instance the facts were neither alleged nor proved which would show that the judgment rendered in the earlier case was void. For that reason, the issues are decided in favor of the plaintiff and judgment may be drawn accordingly."

This memorandum is quoted as an explanation of the reasons for the decision of the court, not as otherwise affecting the findings and conclusions. Mosley v. Magnolia Petroleum Company, 45 N.M. 230, 114 P.2d 740.

The defendants assigned numerous errors, principally on account of the refusal of the trial court to adopt their requested findings of evidentiary facts. The court did not err in refusing to adopt them; only ultimate facts should be found. Burguete v. G. W. Bond & Bro., 43 N.M. 97, 85 P.2d 749; Christmas v. Cowden, 44 N. M. 517, 105 P.2d 484.

It is difficult to comprehend the theory upon which the trial court determined the case. Its memorandum, which we have

quoted, indicates that the decision rests upon the circumstance that the defendant did not establish that the decree in Stanfill v. Scott Hankins et al., hereinbefore referred to, was void.

The only question properly presented to the district court and here, is whether the plaintiffs had the title they contracted to convey, and the trial court refused to find specifically, as fact or law, that it did or did not, though requested to do so.

The contract provided that plaintiffs would "make, or cause to be made, a good and sufficient merchantable title, abstract and deed." While the intention of the parties might have been better expressed than by the language used, it could only mean that plaintiffs should furnish an abstract of title that would itself show a marketable title of record in them, Buswell v. Kerr Co., 112 Minn. 388, 128 N.W. 459, 21 Ann.Cas. 837, and would execute a deed conveying a marketable title of record to defendants. A contract to furnish an abstract showing a marketable title is not satisfied by furnishing a good title in fact, unless it appears good of record. Danzer v. Moerschel, Mo.Sup., 214 S.W. 849, 7 A.L. R. 1162; Brown v. Widen, Iowa, 103 N.W. 158; 55 A.J. "Vendor & Purchaser" Sec. 297; and see anno. 52 A.L.R. (II b) p. 1464.

We will determine the case upon the question of whether plaintiffs' title is mar-ketable of record. If plaintiffs have established this, the decree for specific performance should be affirmed, otherwise it should be reversed.

The plaintiffs introduced an abstract of title in evidence; and it, together with the stipulations heretofore copied, contains all the evidence introduced to establish a marketable title of record.

The material parts of this evidence, all of which are admitted, are as follows:

On October 24, 1922, one Scott Hankins became the owner of the property in suit. A paving lien filed on August 31, 1927, in the office of the county clerk of Quay county was assessed against "Scott Hankins' Estate, C/o G. A. Eeager." For the years of 1936, 1937 and 1938 the property was assessed on the tax rolls of Quay county to Miss Scotty Hankins whose address appeared thereon as 841 Bath Ave., Ashland, Kentucky. On December 7, 1936 a tax sale certificate executed by the county treasurer in consideration of $6.70 was issued to the state, following the sale of the lots for taxes for 1935. On July 11, 1938 this certificate was assigned to George B. Taylor in consideration of $20.01. On December 16, 1928 a tax deed was issued to George Taylor in which the consideration was stated to be $6.70. On February 23, 1942, George Taylor and wife deeded the property in question to C. M. Stanfill. Stanfill died on January 15, 1944 and his interest, if any, to

the property passed by will to his widow Lena G. Stanfill. On July 2, 1946 Lena G. Stanfill filed a suit to quiet title, in which suit a decree was entered on October 17, 1946, quieting title in her. Lena G. Stanfill conveyed the property to Ellis J. Peterson and Peterson conveyed it to the plaintiffs. The property was mortgaged by plaintiffs to the Tucumcari Federal Savings & Loan Ass'n to secure an indebtedness of $3750, a part of which had been paid at the time the contract in question was entered into.

The defendant Doherty testified in substance that he had been advised that the title to the property was not merchantable; that he wanted it for a home and he was ready to release the $2000 whenever the title was cleared. An officer of the Devor Agency testified that they held the $2000 and the deed and were ready to deliver them when the title was cleared. The trial court in its decree required the defendants to pay to plaintiffs interest on the full sum of $5581.31 from December 2, 1947.

■ The courts have many times defined "marketable title." See Words & Phrases, Perm.Ed. p. 539. The definition we adopt is as follows:

"A 'marketable title' is a title not subject to such reasonable doubt as would create a just apprehension of its validity in the mind of a reasonable, prudent, and intelligent person; one that a person of reasonable prudence and intelligence, guided by competent legal advice, would be willing to take and pay the fair value of the land for. Summy v. Ramsey, 53 Wash. 93, 101 P. 506, 507, quoting Eggers v. Busch, 154 Ill. 604, 39 N.E. 619."

Under the contract here considered the title must be of record.

■ The first contention is that the decree in Stanfill v. Hankins et al., supra, was void as to the defendants not personally served with process, because the allegation of ownership of the property was not sufficient to describe the interest of plaintiff therein. The description of the property and the interest of plaintiff is stated as follows:

" * * * that the plaintiff is the owner in fee of Lot 3 in Block 20 of the Gamble Addition to the City of Tucumcari, New Mexico, and of Lot 4 in Block 13 of the Barnes Addition to the City of Tucumcari, and of the SW¼SE¼ of Section 9 in Township 10 North of Range 32 East in Quay County, New Mexico, and that the plaintiff and her immediate predecessors entitled have been in the actual, open, notorious, exclusive and adverse possession of the said real estate with payment of taxes and assessments thereon for more than ten years immediately prior to the date of this complaint."

The case of Oliver v. Enriquez, 17 N.M. 206, 124 P. 798, 799, is cited by defendants

in support of this contention. In the Oliver case the court said:

"The appellants, in their complaint, do not allege that they are the owners in fee simple of the real estate described in the complaint, clearly and directly, but say 'by virtue of divers deeds of conveyance and confirmation from the Grant of the Colony of Refugio and long and continuous adverse possession, etc.,' they are the owners in fee simple of the real estate."

Here it is alleged that the plaintiffs are the owners of several tracts of land in fee, which is followed by an allegation of possession for ten years and of other facts constituting title by limitation. But it is not alleged that the fee title is based on limitation.

We are satisfied from reading the whole complaint, as well as from the facts of this case, that the asserted limitation title was intended to apply to the forty acre tract in that suit and not to the city lots. The complaint was not defective in alleging title, although the court held title to the city lots was barred.

It is asserted that the constructive process in the Stanfill case was void as to all of the defendants not personally served, or who did not appear in the case, for reasons hereafter stated, and as a consequence the decree as to such defendants is void.

Constructive process is provided for by Rule 4(g) of Rules of Civil Procedure, 1941 Comp. § 19-101(4) (g), the part of which material here is as follows:

"When any plaintiff, his agent or attorney in any civil action or proceeding hereafter commenced, in any court of record, shall file a sworn pleading or affidavit, stating that any defendant resides or has gone out of the state, or has concealed himself within the state, has avoided service of process upon him or his or their names or places of residence are unknown, or his or their whereabouts cannot be discovered after due inquiry and search has been made, or is in any manner situated so that process cannot be served upon him or them, in such case it shall be the duty of the clerk of said court to issue a notice of the pendency of said action or proceeding, which shall be published in some newspaper published in the said county where the cause may be pending; said notice shall contain the names of the plaintiff and defendant to the cause, or if there is more than one defendant to the cause the notice shall contain the name of said plaintiff and the name of the first of said defendants followed by the words 'impleaded with the following named defendants against whom substituted service is hereby sought to be obtained, to wit:' it being hereby required to name such defendants against whom substituted process is sought to be obtained * * *. Said notice shall be signed by said clerk under the seal of the said court. The publication of said notice shall be proved by the affidavit of the publisher, manager or agent of said newspaper, and the same shall be taken and considered as

sufficient notice of summons and valid in law, and the plaintiff thereupon may prosecute his said cause to a final judgment under the same.

\* \* \* \* \*

"In suits to quiet title or in other proceedings where unknown heirs are parties, or where the defendants are designated by name, if living, or if deceased, are designated as the unknown heirs of such named party, it shall be sufficient to use the following form in the notice of pendency of action: 'Unknown heirs of the following named deceased persons;' then follow with the names of the various deceased persons whose unknown heirs are sought to be served; as to parties named in the alternative: 'The following named defendants by name, if living; if deceased, their unknown heirs.' Then name such persons."

The complaint was a sworn pleading and was styled as follows:

"Lena G. Stanfill, Plaintiff, v. Scott Hankins, if living, if deceased, The Unknown Heirs of Scott Hankins, deceased, Mrs. C. C. Head, if living, if deceased, The Unknown Heirs of Mrs. C. C. Head, deceased, (here follow names of other defendants not material here), and To All Unknown Claimants of Interest, adverse to the title and estate of the plaintiff in or to the real estate described in this complaint, Defendants." } "No. 8504

The allegations in the body of the complaint, material here, are as follows:

"That the plaintiff is a resident of Tucumcari, Quay County, New Mexico \* \* \* and that the last place of residence known to the plaintiff of the defendant Scott Hankins, was Tucumcari, but that upon diligent inquiry of the Postmaster at Tucumcari, New Mexico, the said Scott Hankins is no longer a resident of Tucumcari, New Mexico, and that after diligent inquiry from persons who knew the said Scott Hankins, the plaintiff is unable to ascertain where his present place of residence is, and is unable to ascertain after diligent inquiry whether or not the said Scott Hankins, defendant, is living or dead; \* \* \* that if the defendant Scott Hankins and the defendant Mrs. C. C. Head are dead, the plaintiff, after diligent inquiry, has been unable to ascertain the names, ages and places of residence of their unknown heirs;

\* \* \* \* \*

"That upon information and belief, the persons hereinbefore named and who are now deceased, in their respective lifetimes claimed some right, title, interest, lien or estate in or to the property hereinbefore described, and that upon information and belief the defendants designated herein as unknown heirs of any such deceased persons make some claim, right, title, interest, lien or estate in or to the said property adverse to the title and estate of this plaintiff,

and upon information and belief, all of the defendants named in this action make some claim of right, title, interest lien or estate in or to the said real estate adverse to the title and estate of the plaintiff therein and thereto, but the plaintiff alleges that all such claims are inferior to the title and estate of the plaintiff therein and thereto * * *."

The parts, material here, of the notice of pendency of suit in the Stanfill case are as follows:

"Notice of Pendency of Suit
"(Summons by Publication)

"State of New Mexico To, Alldredge & Saxon, a co-partnership, impleaded with the following named defendants upon whom substituted service is hereby sought to be made, to-wit: (Names of other defendants) * * *. All Unknown Claimants of interest adverse to the plaintiff; and the following named defendants by name if living, if deceased, their unknown heirs, Scott Hankins, Mrs. C. C. Head, Mrs. E. F. Saxon, also known as Lura P. Saxon, Frances Saxon Galloway, defendants, Greeting:

(Here follows statutory form of notice)

"Witness my hand and the seal of the District Court this 1st day of July, 1946.
"(Seal)              Beatrice Besse, Clerk

"Published in the Tucumcari American, "July 4, 11, 18 and 25, 1946."

The decree in the Stanfill case contains the following:

"This cause coming on regularly for hearing in open court at Tucumcari, New Mexico on the 28th day of August, 1946; the plaintiff appeared by C. C. Davidson, her attorney, and none of the defendants appearing either in person or by attorney, except defendants who filed written disclaimers; and the Court having examined the files finds that service by publication was made as to all defendants, except those who voluntarily appeared and filed disclaimers, as shown by affidavit of publisher on file herein, and the Court having entered certificate of non-appearance as to such defendants not having filed disclaimers, such defendants are adjudged to be in default and that judgment by default should be entered against them; (Here follows the body of the decree quieting title in plaintiff)."

It is asserted that the decree is void because the judgment roll shows that the statute providing for constructive service was not followed, in that it requires an affidavit as a basis of constructive service of process, in which it is stated that the unknown defendants to be served by published notice of the pending suit were unknown and that "their whereabouts could not be discovered after due inquiry and search has been made."

If the affidavit or sworn pleading states that those sued as unknown defendants are in fact unknown it is sufficient. In suits to quiet title as in this case, "it shall be sufficient to use the following form in the notice of pendency of suit * * * as to parties named in the alternative: * * 'the following named defendants by name if living, if deceased, their unknown heirs: Then name such persons.' Rule 4(g) supra." This complies with the jurisdictional requirements. Bowers v. Brazell, 31 N.M. 316, 244 P. 893. We do not intend to say that these allegations in a sworn pleading dispense with the diligence and good faith which should be exercised to discover whether the alleged defendant was living or dead, or whether he had heirs and if so their names and places of residence, so that the constitutional requirement for due process of law in such cases will be supplied. This is required and will be presumed to have been supplied in the absence of a contrary statement in the pleadings, affidavit or judgment roll. Owens v. Owens, 32 N.M. 445, 259 P. 822, 823.

The Owens case was a direct action to set aside a divorce decree on the ground of the use of fraudulent constructive process. We said:

"It is clearly inferable from the findings that appellant, had he desired, could easily have located appellee's residence. Dismissing from view the express falsity, there remains the question whether without it there would have been a false implication. Can one honestly swear that an adversary's residence is unknown when it can be easily ascertained? Ignorance excuses notice by mailing. May it be a willful, studied, and deliberate avoidance of the means of knowledge? The answer would seem to be obvious if any consideration is given to the plain purpose of Section 4096 (Rule 4(g)).

\*       \*       \*       \*       \*       \*

"Constructive service is in derogation of the common law. It is harsh. It lends itself to abuse. It is only resorted to from necessity. Hence the statute granting the right to proceed in that manner is to be strictly construed and strictly followed. * * *

"So, while the statute has nothing to say of diligence or of good faith, they are necessarily implied. In enacting section 4096 (Rule 4(g) the territory of New Mexico, through its Legislature, performed an act of justice and fairness. Adopted in that spirit, it must be followed and construed in the same way. * * *

"It is one thing to sustain jurisdiction when the showing made meets the requirements of the statute. It would be quite another to sustain a decree obtained by a fraudulent affidavit that the defendant's residence was unknown."

Regarding the question, this court stated in Singleton v. Sanabrea, 35 N.M. 491, 2 P.2d 119, 121:

"We hold that a duly verified complaint is a sworn pleading within the contemplation of said section 105-308, in which plaintiff may make the requisite showing for the publication of a notice of the pendency of a cause. Appellee's objection that the record does not show what diligence was used as a basis for the declaration that the place of residence and whereabouts of the defendant is unknown, and therefore the notice should not have been published, is not well taken."

And see Baca v. Catron, 24 N.M. 242, 173 P. 862; and Pankey v. Ortiz, 26 N.M. 575, 195 P. 906, 30 A.L.R. 92.

It was assumed in Harlan v. Sparks, 10 Cir., 125 F.2d 502 (a suit to quiet title to real estate), for the purpose of that case at least, that a decree determining heirship entered by a probate court in New Mexico on proper constructive service of process was binding in subsequent litigation involving the title to real estate. It has since been held by this court that probate court judgments are not binding as res judicata in such litigation. Dunham v. Stitzberg, 53 N.M. 81, 201 P.2d 1000. The question in the Harlan case was whether the constructive process was served on the plaintiffs, who were heirs entitled to an interest in an estate. In holding that the judgment as to these heirs was void because of defective service of process, the Circuit Court of Appeals said [125 F. 2d 505]:

"The court found that at the time of filing of the petition, at the time of the publication of the notice, and at the time of the entry of the decree, the administrator and his attorney knew of the existence of certain blood relatives of John B. Kipling, deceased, and in the exercise of due diligence could have ascertained the names and places of residence of the appellees and could have caused process to be served upon them in connection with the probate proceeding; and that finding is supported by substantial evidence.   *   *   *

"But whether the appellees be catalogued as unknown heirs of Emma Kipling, deceased, or as known heirs not named in the proceeding whose whereabouts could by the exercise of reasonable diligence have been ascertained and service of process had upon them, the decree in either event was entered without personal or constructive service of process being effectively had upon them. It therefore is open to direct or collateral attack by them on that ground. Rodriguez v. La Cueva Ranch Co. (17 N.M. 246, 134 P. 228), supra; In re Field's Estate (40 N.M. 423, 60 P.2d 945), supra."

In Vorburg v. Vorburg, Cal.Sup., 117 P.2d 875, 876, an order for publication of

summons was procured upon affidavits stating that after due diligence defendant could not be found within the state. Process was served by publication and judgment followed. The judgment was attacked as void for an insufficient affidavit for process. The due diligence requirement was shown by an affidavit to the effect that plaintiff had looked through the telephone directory where the action was pending and that unsuccessful inquiry as to the defendant's whereabouts was made of the district attorney where he was charged with extortion, and inquiry of his counsel disclosed that he had not seen or heard of the defendant since the time he represented him, and was of the opinion that he had departed from California. The court said:

"Diligence is a relative term and must be determined by the circumstances of each case. The question is one for the trial court in the first instance. 'If the facts set forth in the affidavit have a legal tendency to show the exercise of diligence on behalf of the plaintiff in seeking to find the defendant within the state, and that after the exercise of such diligence he cannot be found, the decision of the judge that the affidavit shows the same to his satisfaction is to be regarded with the same effect as is his decision upon any other matter of fact submitted to his judicial determination.' * * * As further stated in Rue v. Quinn, supra, 'There is not an entire ab-

sence of evidence in the affidavit on behalf of the plaintiff to sustain the order, and it cannot be regarded as void. The facts set forth therein afford some evidence of diligence on the part of the plaintiff to find the defendant, and also that, notwithstanding such diligence, she could not be found within the state; and * * it cannot be said that the affidavit is of no legal effect to authorize the court to be satisfied therefrom, or that it did not have a tendency to establish both the fact of diligence and of failure to find the defendant'. As already stated, the affidavits here involved show that defendant could not be found after the exercise of reasonable diligence and we are satisfied that a sufficient foundation was thereby laid to support the order for publication of summons."

In the case at bar the trial court stated in its judgment:

"* * * and the court having examined the files finds that service by publication was made as to all defendants, except, etc."

It was thus found by the court that Scott Hankins if living, and if deceased, his unknown heirs, were served with process, and they were adjudged to be in default.

The court had before it the complaint containing the allegations of diligence and good faith and seemed to approve them. Many divorces have been

granted and decrees quieting title entered, supported by constructive service of process and we are not inclined to be so technical that our ruling here will inspire litigation to set aside decrees long assumed, with good reasons, to be secure against direct or collateral attack, in the absence of fraud or facts disclosing the lack of due process of law. We do not mean to encourage laxity in securing jurisdictional information regarding the names, residences and status of defendants in such cases; indeed ordinary prudence would suggest a careful inquiry and search, and this must be done, as the procedure must be strictly followed. However, in the absence of fraud in serving process, Owens v. Owens, supra, the judgment of the district court approving the diligence used, although unnecessarily set out in the application, will not be disturbed by us on collateral attack, if the allegations of diligence are not wholly lacking in substance.

The California statute construed in the Vorburg case, supra, provided that where the person on whom service is to be made cannot after due diligence be found within the state and the facts appear by affidavit to the satisfaction of the court, or a judge, such court or judge may make an order that the service be made by the publication of summons. The affidavit must show two facts: (1) the exercise of due diligence to find the defendant within the state, and (2) a failure to find him after the exercise of such diligence. In this state it is only necessary to allege the ultimate fact of diligence and not the particular acts exercised alleged to be diligence; but due diligence must be exercised to satisfy the requirements of due process of law. If the plaintiff in the Stanfill case had not particularized his diligence the question could not have been raised in this collateral attack on the judgment. But as he did state the facts which he claims amounted to due diligence, the district court was authorized to determine the question and did determine that due diligence had been exercised. There is not an entire absence of evidence of diligence and we are unable to say that the court erred in holding that the judgment was not void on collateral attack. McDonald v. Padilla, 53 N.M. 116, 202 P.2d 970.

That decrees to quiet title, like other judgments and decrees, may be directly attacked because of a claim of lack of due process or other fraud on the court or adverse party Owens v. Owens, supra, it does not necessarily follow that a title is unmarketable, unless there is more than a remote probability that such attack will be made, and if made that it would be successful. Such is the situation here.

The decree of the district court should be, and is, affirmed.

It is so ordered.

LUJAN, SADLER, McGHEE and COMPTON, JJ., concur.

On Motion for Rehearing

BRICE, Chief Justice.

The defendants (appellants) move for a rehearing and assert that we failed to consider their Point 14, which is as follows:

"Appellants should not be required to pay any interest to appellees."

Our failure to consider this point was a clear oversight.

The contract provided as follows:

"In consideration of the covenants and agreements of the grantor herein the grantee agrees and promises to pay to the grantor herein the sum of Two Thousand ($2,000.00) Dollars as follows:

"Two thousand Dollars to be paid in cash to the parties of the first part with the understanding that a loan on said property, in the amount of $3581.31, may be assumed effective this date, by purchasers. Loan is carried by Tucumcari Federal Building and Loan Association. Grantor agrees to pay interest to date * * *."

The contract further provided that defendants would keep the improvements on the lot insured for $5000 against loss by fire and wind "for the benefit of the parties hereto, as their interest may appear."

The record discloses that a mortgage was made by plaintiffs in favor of Tucumcari Federal Building and Loan Association securing a note for $3750 dated December 20, 1946, with interest at 7 percent for the first thirty-six months, beginning January 1, 1947 (other rates were prescribed for subsequent years), payable at $43.54 per month on the amortization plan. The balance due on the note at the date of the contract was $3581.31 which defendants were authorized to assume and pay, as a part of the consideration.

It is evident that it was the intention of the parties that this debt should be assumed and paid by defendants as a part of the consideration. This appears from the fact that the balance of $2000 was placed in escrow to be delivered upon completion of the transaction, and no other provision was made for the payment of the balance of the consideration; also no judgment was asked or given for the balance of the consideration of $3581.31.

Now it may be that plaintiffs have made payments on this note since the date of the contract to protect themselves against the acceleration provision in the mortgage. If they have made such payments they may be recovered from the defendants in an action for such purpose, and the decree herein shall not affect such right of action, and the district court should so provide. But the trial court erred in allowing interest on the amount of the mortgage debt which the defendants assumed to pay. The defendants

should be required to pay interest on the $2000 only. The original opinion will not be disturbed as to questions therein decided.

The former order of remand is revoked. The cause is remanded to the district court with instructions to reform its decree in accordance with this opinion, but otherwise the decree of the district court is affirmed. The costs of appeal shall be apportioned equally between the parties.

It is so ordered.

LUJAN, SADLER, McGHEE, and COMPTON, JJ., concur.