PHILIP K. PALAMA and HISAKO KOMAKI
PALAMA *v.* JOHN J. SHEEHAN, et al.

No. 4609.

APRIL 22, 1968.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

Plaintiffs, Mr. and Mrs. Philip K. Palama, filed an action to quiet title to a tract of land generally known as "Nomilo Pond" situated in the ahupuaa of Kalaheo, Island of Kauai, which covers an area of about 60 acres and contains within it a fish pond of 18 acres. The makai (seaward) boundary of said land borders on the State's 100-foot wide beach reserve. The defendants filed an answer claiming fishing rights in the fish pond and a right of way through plaintiffs' land, based on ancient Hawaiian rights or by necessity. The defendants are owners of four separate

parcels of land or kuleanas,[1] ranging in size from 0.13 to 0.032 acres,[2] three of which are situated directly makai of plaintiffs' land and within the State's beach reserve. The remaining parcel is situated within the boundaries of plaintiffs' land and near its makai boundary.

After the non-jury trial, the trial court filed a memorandum of decision ruling that the defendants did not have any rights to fish in the pond, but that they were "entitled to a reasonable use of the now existing right of way through plaintiffs' land to gain ingress to and egress from their respective parcels of land," and that "this will in no way entail any additional burden on plaintiffs for the right of way is now there and in existence * * *." The trial court denied plaintiffs' motion to clarify the decision by making specific findings as to the width and manner of use of the right of way. Plaintiffs appeal and specify as errors, the trial court's:

1. Grant of a right of way to the defendants when there was no evidence adduced at the trial to show that a right of way existed, based on ancient Hawaiian usage or necessity;

2. Refusal to clarify its decision in that the width and manner of use of the right of way were material issues;

3. Failure to limit the right of way to pedestrian and equestrian use in that a right of way based on ancient Hawaiian usage or necessity is limited to the use made at the time of the grant or shortly thereafter.

Testimony at the trial indicated that there were two possible routes to defendants' land. The mauka (toward the mountains) route ran directly through plaintiffs' land from the mauka

---

[1] "The Hawaiian term 'kuleana' means a small area of land such as were awarded in fee by the Hawaiian monarch, about the year 1850, to all Hawaiians who made application therefor." *De Fries* v. *Scott*, CCA Haw. 268 F. 952, 953.

[2] Defendants, John J. and Patricia M. Sheehan, husband and wife, owners of R.P. 7737, L.C.A. 6647 Apana 3 to Una and R.P. 7737, L.C.A. 6647 Apana 4 to Una, conveyed their interests to Archie K. Komae, Harry M. Sasaki, and Richard T. Asato, as tenants in common, who were substituted as parties defendants prior to trial. The remaining defendants are owners, as tenants in common, of R.P. 7627, L.C.A. 3395-B Apana 3 to Keoua and R.P. 7627, L.C.A. 3395-B Apana 4 to Keoua. There is evidence that Apana 4 is a salt pond used for making salt.

Kalaheo Homesteads area makai to defendants' parcels. The other route, from the Koloa (easterly) direction, ran circuitously along a government road to a private plantation road which paralleled the ocean, then turned down the bottom of a ravine and along the beach to defendants' parcels.

Considering plaintiffs' first specification of error, we find it necessary to examine ancient Hawaiian tradition, custom and usage. Although there were exceptions, in ancient Hawaii, the division of land known as an ahupuaa generally ran from the sea to the mountains. Such a division enabled a chief and his people to obtain fish and seaweed from the ocean, and fuel, canoe timber and mountain birds, and the right of way to obtain these things. *In re Boundaries of Pulehunui,* 4 Haw. 239. The Great Mahele awarded whole ahupuaas, however, the rights of native tenants who held kuleana lands within the ahupuaas, were expressly reserved, "Koe no Kuleana o Kanaka." The rights of native tenants as owners of kuleana lands were set forth in the Act of August 6, 1850. The pertinent portions are found in Section 1477 of the 1859 Civil Code as follows:

> "Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. The people shall also have a right to drinking water, and running water, and the *right of way.* The springs of water, running water, and *roads, shall be free to all,* on all lands granted in fee simple; provided, that this shall not be applicable to wells and water-courses, which individuals have made for their own use." (Emphasis added.)

In some respects the defendants' kuleanas in the instant case are similar to the ilis, the next smaller subdivision of an ahupuaa, which often consisted of several distinct sections of land in different parts of the ahupuaas which were called "leles" or "jumps." On Oahu, many lands in Waikiki had their corresponding patches of taro land and forest in Waikiki and Manoa Valley.

The taro lands of Wailupe were found in Palolo Valley. In Kalihi and Ewa there were ilis which consisted of eight or ten scattered leles included under one title. Similarly, a native tenant's kuleana often consisted of several sections or "apanas" which were irregularly scattered about in the ahupuaa. See Alexander, "A Brief History of Land Titles in the Hawaiian Kingdom," *Hawaiian Almanac and Annual for 1891,* (rev. ed. of Surveyor-General's Report of 1882 to the Minister of Interior) ; *Horner* v. *Kumuliilii,* 10 Haw. 174.

Mrs. Elizabeth K. Medeiros and others testified that her parents, grandparents and great-grandparents used the mauka trail to go to and from their taro patches situated mauka in the Kalaheo Homesteads area and their kuleana at the seashore.[3] Such testimony was sufficient evidence on which the trial court could find that an ancient Hawaiian right of way through plaintiffs' land existed and was used as such by defendants' predecessors in title.

The evidence also shows that the ravine on the Koloa route was flooded with water whenever it rained, preventing use of that route as a right of way for ingress to and egress from the defendants' parcels at such times. In this regard, it is stated in *Kalaukoa* v. *Keawe,* 9 Haw. 191, 193:

"A way of necessity is merely a way created by an implied grant or reservation, the necessity being only evidence of the intention of the parties to make the grant or reservation * * *. And even where there is not a strict, but only a reasonable necessity, as where some other way is possible though very difficult or expensive, this, if coupled with additional evidence of a way actually used and which is apparent and of a continuous nature, has been held to be sufficient evidence of an intention to grant or reserve a way."

By reason of necessity, the defendants are entitled to a right of way through plaintiffs' land as a means of ingress and egress. *Henry* v. *Ahlo,* 9 Haw. 490.

In regard to plaintiffs' second specification of error concerning

[3]Mrs. Medeiros stated that her great-grandparents, grandparents and two brothers were buried in the stone wall on her kuleana.

the refusal of the trial court to make specific findings, the applicable portion of H.R.C.P. 52 (a) provides:

> " (a) EFFECT. In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. *If an opinion or memorandum of decision is filed, stating the facts and the court's opinion on the law, it will be unnecessary to make other findings of fact and conclusions of law.* Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41 (b) ." (Emphasis added.)

In *Shannon* v. *Murphy*, 49 Haw. 661, 668, in discussing Rule 52 (a) , we stated that: "the ultimate test as to the adequacy of a trial judge's findings is 'whether they are sufficiently comprehensive and pertinent to the issue to form a basis for the decision and whether they are supported by the evidence.' 5 Moore's *Federal Practice* 2656; see also, 2B Barron & Holtzoff, *Federal Practice and Procedure* 504."

Plaintiffs suggest that the trial court should state specifically that the right of way shall be, for example, ten feet wide. We do not perceive the necessity for the trial court to have so stated under the circumstances. There was no evidence presented either at the trial or at the hearing on the motion to clarify the decision to enable the trial court to make a finding based on a specific numerical measure. Placed in such a situation it is not mandatory upon the trial court to find out for itself the specific width commonly used for vehicular right of ways or the specific

width necessary in a particular case to make a finding as plaintiffs here request. In any case, the terms "reasonable use" and "now existing right of way" furnish sufficient guides to set a limit to the right of way. The trial court's findings of fact were adequate.

Plaintiffs contend that assuming the trial court's term "reasonable use" of the right of way includes vehicular use, the right of way based on necessity or ancient Hawaiian usage should be limited to the time of grant or shortly thereafter. Plaintiffs seek to diminish the burden on their land by restricting the right of way to pedestrian and equestrian use as it existed prior to 1910 when the right of way was a trail. But, "the same rules which apply to the existence of a way apply equally to its location, direction, width and the purposes for which it may be used. The question is merely one of intention, to be proved by competent evidence." *Kalaukoa* v. *Keawe, supra*. In the instant case there was evidence that either before or about 1905, a trail through plaintiffs' land was in existence. In 1910, the plaintiffs' predecessor in title, A. M. McBryde, enlarged the former trail and built a road over it. Thus, when plaintiffs acquired the land in 1938, the road over what had been formerly a trail had already been in existence for 28 years. Such circumstances indicate that a right of way wide enough to accommodate vehicular traffic could pass through plaintiffs' land without imposing an unreasonable burden upon it. Furthermore, the trial court found that a reasonable use of the existing right of way by the defendants will not entail any additional burden on plaintiffs' land.

We do not find sufficient grounds to diminish the burden on the plaintiffs' land by restricting the right of way from the presently existing road adapted to vehicular traffic to a trail for equestrian and pedestrian uses only. There was no reversible error.

Judgment affirmed.

*Jon J. Chinen* and *Morris S. Shinsato* for plaintiffs-appellants.

*Clesson Y. Chikasuye* for defendants-appellees Archie K. Komae, et al.

*Clinton I. Shiraishi* for defendants-appellees Rebecca P. Medeiros, et al.