MARIA M. HUSTACE (Substituted for HAROLD P. HUSTACE), Plaintiff-Appellee, *v.* CECILIA LEILANI KAPUNI, Defendant-Appellant, and GREGORY P. KAPUNI, JULIA KAPUNI SATO, LEILANI R. TOLENTINO, JOHN DOE 1 to JOHN DOE 100, and JANE DOE 1 to JANE DOE 100, Defendants

NO. 10370

(CIVIL NO. 4051(1))

APRIL 8, 1986

BURN, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Defendant-Appellant Cecilia Leilani Kapuni (Kapuni)[1] appeals from a judgment granting to Plaintiff-Appellee Maria Hustace (Maria)[2] title by adverse possession to two kuleanas[3] (kuleanas) at Kaluaaha, Moloka'i.[4] We vacate the judgment and remand for further proceedings.

The dispositive question on appeal is whether the trial court erred in denying Kapuni's motion to set aside the defaults entered against two of the heirs of the last record owners of the kuleanas and to allow her to assert her claim in her own right or to assert a claim as the grantee of those two heirs. We hold the court erred in denying Kapuni's motion and in not allowing her to assert her rights as grantee. We also hold that the judgment is void as to all defendants who were not personally served or who did not appear. We do so under the plain error rule. The judgment is not void as to those defendants who were personally served or who did appear.

## PROCEDURAL HISTORY

On February 2, 1979, Hustace filed a complaint to quiet title, naming as defendants Gregory P. Kapuni (Gregory), Julia Kapuni Sato (Julia), Leilani R. Tolentino (Leilani) (children of Kapuni and her husband, Panila, who had died), Kapuni, and John Doe 1 to John Doe 100. The

---

[1]None of the other defendants have appealed.

[2]Maria M. Hustace was substituted as plaintiff for her husband, Harold Hustace, the original plaintiff, who died in 1983. In the opinion, Hustace will refer to the party plaintiff.

[3]"The Hawaiian term 'kuleana' means a small area of land such as were awarded in fee by the Hawaiian monarch, about the year 1850, to all Hawaiians who made application therefor." Palama v. Sheehan, 50 Haw. 298, 299, 440 P.2d 95, 96 (1968) (citation omitted). A kuleana is generally a small parcel within an ahupua'a. An ahupua'a is described as "a division of land which generally ran from the sea to the mountains." Kalipi v. Hawaiian Trust Co., Ltd., 66 Haw. 1, 6, 656 P.2d 745, 748 (1982).

[4]The two kuleana parcels are described in the complaint as follows;
   All of that certain parcel of land (comprising portion of Apana 5 of Royal Patent (School) Grant Number 24 to The Board of Education, all of Royal Patent Number ___, Land Commission Award (L.C.A.) Number 4092 to Kaluna and all of Royal Patent Number ___, L.C.A. Number 8106 to Haina situate, lying and being at Kaluaaha, Island of Molokai, County of Maui, State of Hawaii and bearing Tax Key designation 5-7-11-5 (Area 3.42 acres, more or less).

lower court authorized service by publication on the Doe defendants. After Hustace named additional defendants in an amended complaint,[5] a second order was entered authorizing service by publication on those defendants. Gregory, Julia, Leilani, and Kapuni filed answers and counterclaims. On July 25, 1980, default was entered against all other defendants for failure to answer.

Kapuni's counterclaim asserted that she was the rightful owner of a life tenancy in the kuleanas and that Hustace's occupation was permissive.[6] On May 11, 1983, the trial court heard Hustace's motion for partial summary judgment on the counterclaims. At that hearing, the trial court allowed counterclaimants up to October 1, 1983, within which to produce a genealogy establishing their claim to the kuleanas. They failed to do so and on October 25, 1983, the trial court entered its order granting Hustace's partial summary judgment motion and dismissing the counterclaims.

On November 23, 1983, Kapuni obtained a quitclaim deed from Josephine Flores (Flores) to her interest in one of the kuleanas, L.C.A. No. 8106 to Haina.[7] On December 1, 1983, Kapuni obtained a quitclaim

---

[5]The following were added: Hannah J. Hitchcock and her heirs; H. R. Hitchcock, Sr., also known as Harvey Rexford Hitchcock, Sr., and his heirs; Randolph Howard Hitchcock and his heirs; William Charles Hitchcock and his heirs; Harvey Rexford Hitchcock, Jr. and his heirs; Edward J. Hitchcock and his heirs; Hannah Eliza Hitchcock and her heirs; George K. Hitchcock and his heirs; Charles Hitchcock and his heirs; Mabel Eunice Hitchcock and her heirs; Dorcas Eloise Hitchcock, also known as Dorcas Eloise Hitchcock Farr, and her heirs; Ottina Tyler Kuualoha Hitchcock Mehau and her heirs; Dorcas Ili Hitchcock, also known as Dorcas Ilae Hitchcock, and her heirs; Eliza Hennesey Hitchcock and her heirs; Joaquin Enos Souza, Jr. and his heirs; Helen F. Hitchcock and her heirs; Newton Kaanohi Hitchcock and his heirs; Helena Opuulani Hitchcock and her heirs; Rebecca Howard Hitchcock and her heirs; Mrs. Poo John and her heirs. Only the heirs of Rebecca Howard Hitchcock and Mrs. Poo John are involved in the title to the kuleanas. *See* notes 7 and 8, *infra.*

[6]It is not clear from the record just how the counterclaimants expected to establish their interest. However, it appears that Kapuni's husband was claiming title through his mother who received the property from her family. We assume that her husband died intestate and Kapuni was claiming some kind of life estate and the children claimed the fee.

[7]Hustace's certificate of title reveals that title to L.C.A. No. 8106 passed from Ieke Haena and his wife, Mrs. Kamaliiwahine to their daughter Mrs. Poo John (John) by deed dated April 17, 1890, which was recorded on April 26, 1911. John married Mr. Phillip Pali. They both died leaving Adam Pali as their heir. Adam Pali died leaving Flores as his heir. Query whether "Haina" and Ieke "Haena" were the same person.

deed from John Goss (Goss) for his interest in the other kuleana, L.C.A. No. 4092 to Kaluna.[8]

Based on these deeds, Kapuni moved the trial court to declare that she had an interest in the property and to reinstate her counterclaim or, in the alternative, to set aside the default entered against Flores and Goss as heirs of Mrs. Poo John (John) and Rebecca H. Hitchcock (Hitchcock), respectively. On December 22, 1983, the trial court denied Kapuni's motion, but allowed her to participate at trial by cross-examining Hustace's witnesses and calling her own witnesses "for appeal purposes."

After a bench trial, the trial court concluded that Hustace had established title to the kuleanas through adverse possession by actual, open, visible, notorious, hostile and continuous possession of the kuleana for at least ten years.[9] Kapuni timely appealed.

## KAPUNI'S STANDING TO APPEAL

Hustace argues that Kapuni has standing to appeal only the partial summary judgment on her counterclaim because she is not aggrieved by the final judgment. The argument is without merit, since final judgment encompasses the partial summary judgment.

Hustace also contends that Kapuni has no standing under the deeds of Flores and Goss, because their interests, if any, were so minuscule as not to give her, as a practical matter, an appealable stake. Hustace cites no authority for the proposition that an appealable interest must be a substantial one, and we reject that argument. *See Ala Moana Boat Owners' Ass'n v. State*, 50 Haw. 156, 434 P.2d 516 (1967). Moreover, we do not believe, particularly in land cases, that standing to appeal is

---

[8]Hustace's certificate of title reveals that L.C.A. 4092 to Kaluna was transferred from W. Kaluna and his wife, Honeliaka Kaluna to Rebecca Howard Hitchcock (Hitchcock) on January 14, 1861. Goss claims title through Cora Hitchcock Townsend, great-granddaughter of Hitchcock.

[9]The action to quiet title based on adverse possession of real property for not less than ten years was first authorized by the legislature in 1959. Act 52, § 1, 1959 Haw. Sess. Laws 38. The requisite period of possession was increased by the legislature to twenty years in 1973. Act 26, § 2, 1973 Haw. Sess. Laws 31: The amending act provides that it does not affect rights maturing before its effective date. Under the facts of the instant case, the enlarged period is not applicable.

 

dependent upon the magnitude of one's claim. *See Hana Ranch v. Kanakaole,* 1 Haw. App. 573, 623 P.2d 885 (1981).

It behooves the court in the pursuit of justice on behalf of all the parties not to be over nice in the application of modern, technical, legal concepts in determining standing in [quiet title] cases.

*Id.* 1 Haw. App. at 576, 623 P.2d at 887; *accord, City and County of Honolulu v. Bennett,* 2 Haw. App. 180, 627 P.2d 1136 (1981).

Under the quitclaim deeds from Flores and Goss, Kapuni acquired whatever interest they may have had in the kuleanas. *See Christian v. Waialua Agricultural Co.,* 35 Haw. 352 (1940); *see generally,* 6 Am. Jur. 2d *Assignments* § 102 *et seq.* (1963); 23 Am. Jur. 2d *Deeds* § 339 (1983). In our view, this included their right to move to set aside the default on the ground of lack of personal jurisdiction and assert a claim of title to the kuleanas.

Hustace also argues that Kapuni is not entitled to relief because even though her motion to reinstate her claim or set aside the defaults was denied, she fully participated in the trial. We do not find the argument persuasive. Her participation in the trial does not deprive her of a right to complain about the result, or the denial of her motion. Furthermore, the court specifically stated that it was allowing Kapuni to participate in the trial "for appeal purposes." Hustace made no objection to that action below and cannot be heard to complain now. Moreover, the record indicates that her participation was only in asserting her claim in her own right. She did not present, nor did the court consider, her claim as grantee of Flores and Goss. As a result of the default their interests were not litigated below, nor were they argued on appeal.

Based on the above, we hold that Kapuni has standing to appeal the judgment in her own right and as the assignee of Flores and Goss.

KAPUNI'S MOTION TO SET ASIDE DEFAULTS

Kapuni asserts the lower court erred in denying her motion to set aside the defaults entered against Flores and Goss.[10] We agree.

---

[10] In her first assignment of error, Kapuni asserts that the trial court erred in granting Hustace's motion for partial summary judgment and dismissing her counterclaim. We disagree.

Service on Flores and Goss, as unknown defendants, was made by publication, pursuant to Hawaii Revised Statutes (HRS) § 669-3 (1976)[11] and §§ 634-23(1) and (2) (1976).[12] The original complaint named as defendants Gregory, Julia, Leilani, Kapuni, and Doe Defen-

---

"[A] motion for summary judgment should be granted only 'where, from the record, there is no genuine issue as to any material fact and movants clearly demonstrate they should prevail as a matter of law.'" *Kang v. Charles Pankow Associates,* 5 Haw. App. 1, 5, 675 P.2d 803, 806 (1984) (quoting *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982)).

In this case, in order for Kapuni to prevail on her counterclaim, she first had to establish good title to the property either by deed or intestate succession. She was given time to establish title, but was unable to do so. She was not entitled to a denial of the motion merely on the hope of developing such evidence at trial. *Waimea Falls Park, Inc. v. Brown,* 6 Haw. App. ___, 712 P.2d 1136 (1985).

In the briefs and at oral argument, Kapuni argued only the merits of her own claim. On the basis of the record, it does not appear that the trial court could have awarded title to the kuleanas to Kapuni in her own right *and* as assignee, since the evidence in the case does not show a split in the titles to the kuleanas. Under the circumstances of the case, either Kapuni owned the legal title or Flores and Goss, and others, did. The denial of her motion precluded her from asserting her claim as grantee of Flores and Goss. This opinion affirming the summary judgment precludes her from further litigating any claim in her own right.

[11]HRS § 669-3 provides:

Notice by publication or registered mail. In any action brought under section 669-1(a) or (b), unknown persons and any known persons who do not reside within the State or cannot after due diligence be served with process within the State may be served as provided by sections 634-23, 634-24, and 634-26.

The section was amended in 1983. *See* note 13, *infra.*

[12]HRS § 634-23 provides in pertinent part:

Joinder of unknown persons; service when defendant unknown or absent. Where an action or proceeding involves or concerns any property, tangible or intangible, within the jurisdiction of a circuit court, or any legal or equitable estate, right or interest, vested or contingent, in any such property, or any status or res within the jurisdiction of a circuit court:

(1) Any person having a claim, interest or concern so as to be a necessary or proper party, who cannot be identified or whose name is unknown to the plaintiff, may be made party to the action or proceeding as provided by the rules of court.

(2) If a defendant is unknown or does not reside within the State or if, after due diligence, he cannot be served with process within the State, and the facts shall appear by affidavit to the satisfaction of the court, it may order that service be made as provided by section 634-24 or by publication, as may be appropriate; provided, that service by publication shall not be valid unless, it is shown to the satisfaction of the court that service cannot be made as provided by section 634-24. The affidavit required by this paragraph shall set forth facts based upon the personal knowledge of the affiant concerning the methods, means, and attempts made to locate and effect personal service on the defendant and any other pertinent facts.

dants 1 to 100. Subsequently, Hustace obtained a title search of the kuleanas and on April 25, 1979, filed an ex parte motion to amend the complaint to add certain named defendants, among them being the heirs of John and Hitchcock, who were Flores' and Goss' alleged predecessors in interest. Hustace was authorized by the trial court's order to serve by publication "defendants who are unknown or do not reside within the State of Hawaii or cannot for any reason be served with process within the State." The published notice was addressed to, among others, "REBECCA HOWARD HITCHCOCK and her heirs" and "MRS. POO JOHN and her heirs." On July 25, 1980, the lower court entered default against all non-answering defendants, including the heirs of Hitchcock and John. We hold that the lower court's authorization for service by publication was improvidently granted.

Under § 634-23(1), a defendant in a civil action may be joined as an unknown defendant "as provided by the rules of court." Rule 17(d)(1), Hawaii Rules of Civil Procedure (HRCP) (1984), requires that the plaintiff in such case set forth in a pleading "with specificity all actions already undertaken in a diligent and good-faith effort to ascertain the person's full name and identity." Hustace did not comply with the rule, either in his complaint or the amended complaint.

Similarly, § 634-23(2) requires that an affidavit, filed in support of a request for service by publication, "shall set forth facts based upon the personal knowledge of the affiant concerning the methods, means, and attempts made to locate and effect personal service on the defendant and any other pertinent facts." The affidavits filed by Hustace's attorney with both the original and amended complaints are utterly devoid of any specificity regarding the efforts made to determine the names of the heirs of John and Hitchcock.[13]

---

[13]The language quoted above from HRS § 634-23(2) was added to the statute in 1976. Act 183, § 1, 1976 Haw. Sess. Laws 339-340. Although the language is clear and unambiguous, we deem it illuminating to look at the legislative history of the amendment to determine its fundamental purpose.

House of Representatives Standing Committee Report No. 550-76, in 1976 House Journal at 1522, reporting on House Bill No. 3043-76 stated that the purpose of the bill was to require the affidavit to contain information concerning the methods and attempts to effect personal service, and to ensure that due diligence is used to locate a defendant. In the debate on the passage of House Bill No. 3043-76 on third reading, Representative Stanley Roehrig, chairman of the House of Representatives Committee on the Judiciary, stated that the problem of whether a plaintiff has used due diligence in locating an unknown or

It is axiomatic that service of process is a fundamental requirement of due process of law, *see Calasa v. Greenwell,* 2 Haw. App. 395, 633 P.2d 553 (1981), and personal service is preferred to constructive service by publication. *Murphy v. Murphy,* 55 Haw. 34, 514 P.2d 865 (1973).

Constructive service of process may only be utilized where authorized by statute, *Murphy v. Murphy, supra; In Re Vockrodt,* 50 Haw. 201, 436 P.2d 752 (1968), and the law requires strict compliance with such statutes. *Murphy, supra; Calasa v. Greenwell, supra.*

> The test [of whether substituted service is authorized], however, is not whether it was in fact possible to effect service in a given case, but whether the complainant reasonably employed knowledge at his command, made diligent inquiry, and exerted an honest and conscientious effort appropriate to the circumstances, to acquire the information necessary to enable him to effect personal service on the defendant.

*Murphy,* 55 Haw. at 36, 514 P.2d at 867 (quoting *McDaniel v. McElvy,* 91 Fla. 770, 779-780, 108 So. 820, 830-831 (1926)).

Diligence is a relative term and each case must be determined upon its own circumstances. *Parker v. Ross,* 117 Utah 417, 217 P.2d 373 (1950). However, "[a]ffidavits devoid of averments of facts showing that due diligence was exercised to make service have consistently been held to be insufficient[.]" *Batte v. Bandy,* 165 Cal. App. 2d 527, 534, 332 P.2d 439, 443 (1958).[14] And it has been held that, even where the statute may be satisfied by the bare allegation of due diligence, the requirement of the exercise of diligence and good faith cannot be foregone. *Campbell v. Doherty,* 53 N.M. 280, 206 P.2d 1145 (1949).

In *Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713 (Okla. 1968), the court pointed out that some primary sources of information as to the

---

absent defendant was especially important in cases dealing with the ownership of land, and was of particular concern on our neighbor islands. 1976 House Journal 520. Thus, the purpose of the statute is particularly appropriate to the case at bar.

The concern over notice by publication in quiet title actions was again addressed by the legislature in 1983 when it amended HRS § 669-3 to require that in cases arising in circuits other than the first circuit publication must be made not only within the circuit where the case is instituted, but also in the first circuit. The law now affords more widespread notice to people affected by the action. Act 222, § 2, 1983 Haw. Sess. Laws 467, 468.

[14]In *Batte,* the affidavit stated, "'That despite diligent efforts,' no service could be made on Cole." 165 Cal. App. 2d at 533, 332 P.2d at 443.

identification and address of a defendant are tax rolls, deed records, judicial and other official records, and that secondary sources may include a telephone directory, or a city directory, or some other similar information base. Where it appears that such sources have been exhausted, the trial court's determination of due diligence will be treated on appeal like any other factual determination.[15] *Id.* 440 P.2d 718-719.

In the instant case, not only did Hustace have the *Bomford* sources of information available but we take judicial notice, Rule 201, Hawaii Rules of Evidence (1980), that a brief visit to the State Archives would have provided Hustace or counsel with the following sources of genealogical information: State library, Bishop Museum, churches, circuit and supreme courts, Mission House, Hawaii Sugar Planter's Association, Department of Health, Department of Immigration and Naturalization, and the State Archives itself.

Hustace's attorney's affidavit failed to aver any facts showing that due diligence was exercised, averring only the conclusory language of the statute. Additionally, there is nothing in the record to indicate that the trial court was presented with any evidence of the efforts used to locate the heirs of John or Hitchcock. *Campbell v. Doherty, supra.*

Moreover, the record shows that an attempt to locate the heirs of John or Hitchcock would not have presented such a monumental task. Hustace's title search indicates the titles to L.C.A. Nos. 8106 and 4209 came down in unbroken lines to John and Hitchcock, respectively. Only their heirs had to be found. Within three or four weeks from the time Alicia Kalahiki,[16] Kapuni's witness, was asked to find any heirs of John and Hitchcock, she was able to identify Flores and Goss. In this connection, we take judicial notice of the fact that Moloka'i is a small island

---

[15]We note that in a memorandum dated August 27, 1975, the Honorable Norito Kawakami, Civil Motions and Assignment Judge, First Circuit Court, admonished "all attorneys" that affidavits in support of motions for service by publication must state facts, not conclusions, "based on personal knowledge describing the methods, means, and attempts made to locate and effect personal service upon the defendant within the State[.]" Judge Kawakami's memorandum also contained a listing of minimum sources of information, which are very similar to those in *Bomford.*

[16]Alicia Kalahiki was initially hired by Kapuni to document a genealogical relationship between Kapuni and Hitchcock or John.

whose population in 1980 was 6,049,[17] and that the majority of Moloka'i's residents are part-Hawaiian,[18] who have lived there a long time, know each other well, and have deep knowledge of each other's ancestral roots.

Moreover, it should be noted that attached to Kapuni's motion to set aside the defaults as to Flores and Goss is Goss' affidavit, together with attachments indicating that in 1976 Goss met and talked to Maria on Moloka'i. He informed her directly that he was a descendant of Rebecca Hitchcock. At that time, Goss was a Honolulu resident who participated in a church gathering at Kaluaaha, near the kuleanas. Maria allowed Goss and others to travel to the grave of his ancestors "through property we were told she owned." Maria had direct knowledge of Goss' existence and his whereabouts. We reject Maria's argument that there is no evidence that Maria communicated this knowledge to her husband, Harold. According to the exhibits attached to Goss' affidavit that event was a historic one for Kaluaaha and received wide notoriety. It is inconceivable that Maria did not talk to Harold about it.

The ease by which the heirs could have been identified is not the test of the sufficiency of Hustace's affidavit, *Murphy v. Murphy, supra;* however, it points out the absence of due diligence in this case. "Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably calculated to do so." *Parker v. Ross,* 117 Utah at 228, 217 P.2d at 379 (concurring opinion of Wolfe, J.).

We hold that in any action to establish title through adverse possession the claimant should be held to strict compliance with the statutory provisions regarding notice.[19] Affidavits should specify the sources the affiant consulted in his efforts to locate and effect personal service on the defendant or defendants. The adverse claimant should not be allowed to

---

[17]State of Hawaii Data Book 1985, Statistical Abstract, Department of Planning and Economic Development, 16 (1985).

[18]1980 Census of Population & Housing Census Tracts, Hawaii Selected Areas, U.S. Department of Commerce, Bureau of Census, pp. 22, 24 (June 1983).

[19]We believe the following language of the supreme court in *City and County of Honolulu v. Bennett,* 57 Haw. 195, 552 P.2d 1380 (1976), to be appropriate here: "In general we approach the issue of notice in a spirit opposed to the unduly facile acquisition of title by adverse possession." *Id.* at 208, 552 P.2d at 1389.

rely on a bald statement that diligent inquiry was made. The consequences of quiet title actions are so severe that to have one's interest in land summarily taken away without an opportunity to respond is in violation of due process requirements[20] and our sense of fairness and justice. Protection against violation of due process requires vigilance against defective notice. Strict adherence to the statute is mandatory. *Murphy v. Murphy, supra.*

On the basis of the above discussion, we hold that the trial court erred in authorizing service by publication against the heirs of Hitchcock and John, and the judgment is void as to their interests. "It is established that, where orders for publication of summons are void by reason of the insufficiency of the affidavits therefor, defaults and default judgments entered and rendered on service made pursuant thereto are likewise *void on their face,* and should be set aside." *Batte v. Bandy,* 165 Cal. App. 3d at 536, 332 P.2d at 445 (emphasis added); *Cavin Memorial Corp. v. Regua,* 5 Cal. App. 3d 345, 357, 85 Cal. Rptr. 107, 113 (1970); *see also Murphy v. Murphy, supra.* Moreover, deprivation of property solely on the basis of substituted service in adverse possession actions is constitutionally deficient in situations where, with the use of due diligence, actual notice is possible. *Louthan v. Amoco Production Co.,* 652 P.2d 308, 310 (Okla. App. 1982).

Lest interested persons believe that our holding is too strict and would cause undue effort and expense, we invite their attention to the concurring opinion of Wolfe, J., in *Parker v. Ross, supra.*

> Many times the value of the property involved is small but the work involved in an honest attempt to discover the address of the defendant, if living, or if dead, the names of the heirs, is considerable and from a monetary standpoint the effort cannot be rewarded by the compensation it deserves because the traffic will not bear the charge conscientious service deserves. Such conscientious service partly unrewarded is one of the services the legal profession must

---

[20]"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed.2d 865, 873 (1950).

contribute. When the property is valuable and clearing the title is a prerequisite to its mortgagability or construction of valuable buildings there is usually more money to pay for the search. There is a bedrock of reasonable diligence under the circumstances of any case which must be reached but in cases where the property involved is quite valuable, the plaintiff will want to make efforts well beyond the bare minimum required to obtain the judicial approval of the affidavit of due diligence. The test in any case is not utter diligence but reasonable or due diligence for no one should take the risk of a bare minimum because it would not be known what the bare minimum would be which would satisfy the judge. For the judge himself would not only want to satisfy himself but be satisfied that this court on appeal would conclude that he had shown proper judgment, and if the case never reached this court, it would be somewhat embarrassing if after publication had been ordered and judgment on constructive service rendered, the owner should appear and show that he had received no notice of the action but that his address could have easily been ascertained had a trifle of ingenuity been exercised as a part of diligence.

*Id.* 117 Utah at 428-29, 217 P.2d at 379.

. Finally, we do not intend by this opinion to open a "pandora's box" and allow everyone whose title to land may have long ago been lost in a case where service was made by publication, to now attack that judgment. In *Giles v. Adobe Royalty, Inc.,* 235 Kan. 758, 684 P.2d 406 (1984), the Kansas supreme court held that modern concepts of due process would not apply retrospectively, because such action would have widespread and devastating effect on divorces and land titles. Those same concerns prompt us to hold here that our decision is applicable prospectively only. *See* Comment, *Constitutional Law: Notice by Publication - Modern Standards of Due Process Not Retroactively Applied,* 24 Washburn L.J. 639 (Winter 1985).

## CONCLUSION

The judgment is vacated as to all defendants who were not personally served or who did not appear, and the matter is remanded for further proceedings as to them. On remand, Hustace will be required to take further "good faith" steps to determine and locate the heirs of John and Hitchcock and to serve them personally. In this regard, Hustace has

been helped by the fact that Kapuni's attorney's tenacity has uncovered Flores and Goss, and other potential heirs. In the event such further heirs cannot be found or cannot be personally served, Plaintiff may then apply to the trial court for authorization to make substituted service. The affidavit in support of the request to make substituted service must conform to the requirements set forth in this opinion.

*Alan T. Murakami* (*Melody K. Mackenzie* with him on the opening brief; Native Hawaiian Legal Corporation of counsel) for defendant-appellant Kapuni.

*Gregory P. Conlan* (*Chun, Kerr & Dodd* of counsel) for plaintiff-appellee.