**Alice M. ALFORD, Plaintiff and Appellant,**

v.

**The UTAH LEAGUE OF CITIES AND TOWNS, an unincorporated association; Jan T. Furner; Kenneth H. Bullock; Carol A. Kotler; Michele Reilly; Jami Adamson; Jack A. Richards; and John Does 1 through 10, individuals, Defendants and Respondents.**

**No. 880669–CA.**

Court of Appeals of Utah.

March 23, 1990.

---

Brian R. Florence, Ogden, for plaintiff and appellant.

Todd S. Richardson and Stephen G. Morgan, Salt Lake City, for defendants and respondents.

AMENDED OPINION *

Before DAVIDSON, BENCH and BILLINGS, JJ.

BILLINGS, Judge:

Alice M. Alford ("Alford"), appeals from a Third District Court order granting summary judgment in favor of the Utah League of Cities and Towns, Jan T. Furner, Kenneth H. Bullock, Carol A. Kotler, Michele Reilly, Jami Adamson, and Jack A. Richards (hereinafter collectively referred to as "League"), dismissing Alford's claim of defamation against the League. We affirm.

The Utah League of Cities and Towns is an organization formed by the municipalities of the State of Utah under the Interlocal Co-operation Act, Utah Code Ann. §§ 11–13–1 to –36 (1986 & Supp.1989). Alford was employed with the League as the director of administrative services. On October 3, 1986, Alford was terminated after

* This opinion replaces the opinion of the same name issued on March 7, 1990.

being placed on probation twice in the previous eight months. The grounds listed on her notice of termination were "insubordination and unwillingness to work with co-workers."

Alford retained an attorney to appeal her termination. Alford's attorney sent a letter to the League on October 16, 1986, requesting a hearing before the Board of Directors of the League ("Board") to review her termination. He requested the League to "come forward with specific instances of insubordination and unwillingness to work with co-workers, sufficient to justify the measures taken." Alford's attorney also requested documentation from the League, stating:

In addition, we would request that, no later than Wednesday, October 22, 1986, the League furnish this office with all the information upon which it claims to have relied in Mrs. Alford's termination, and which it intends to present to the board of directors during the October 24, 1986, hearing. Specifically, we request the following, in writing: ... [t]he names of all individuals who will be present at the hearing on October 24, 1986, to offer statements or testimony regarding Mrs. Alford's job performance during her employment with the League, together with all particulars of the statements or testimony which they will offer; and ... [a]ll particulars of any other information, whether written or verbal (including copies of any information which has been reduced to writing), which the League will present to its board of directors in support of its termination decision.

Again on October 23, 1986, after concluding the original response of the League was not specific enough, Alford's counsel requested specific information be provided to the Board prior to their consideration of her appeal:

The report itself, while it characterizes Mrs. Alford's termination as "an emergency response to a critical situation" does not name a single co-worker nor describe a single event, to justify the charge of "insubordination".[sic] Not

only, therefore, is the report unresponsive to my prior letter, it does not give the board adequate information upon which to base its decision regarding a further hearing....

In order to respond adequately to Alford's request, the League solicited statements from employees who had worked with Alford or had been involved in the decision to terminate her. Alford admits that these employee statements were prepared in anticipation of the Board's review of her termination.

Alford's attorney attended the October 24, 1986, Board meeting. At this meeting, a special hearing was scheduled for Alford's appeal. The Board minutes reflect the following:

Mr. Tom Melloy, attorney for Alice Alford, then returned to the board room. After reconvening the board meeting, counsel member Gurrister made the motion to direct the staff to furnish a copy of the same information to each board member. The motion was seconded by Mayor Scott, motion passed. Mayor Linford moved the date of hearing to be set for November 10, 1986 at 4:00 p.m. The motion was seconded by counsel member Gurrister, motion passed. Mr. Melloy asked for a copy of all written statements originally requested by [Alford's previous attorney] from staff and Mr. Furner. Mr. Melloy agreed that the statements should also be distributed to board members; so that they would be prepared for the November 10 meeting.

Mr. Melloy filed an affidavit claiming he had not affirmatively agreed to the distribution of the employee statements at the October 24th meeting, but confirming that he made no objection to the Board receiving the statements prior to the special hearing.

The employee statements ultimately distributed to Alford's attorney and to each Board member before her November appeal included, among others, the following allegations: she was intoxicated at business meetings, was mentally unstable and unable to control her behavior, and circulated deliberate falsehoods about co-workers

which she then falsely attributed to her supervisor.

Subsequently, Alford filed this action claiming that the League defamed her by providing these employee statements to the Board. The League filed a motion for summary judgment arguing four grounds in support of the dismissal of Alford's defamation claims: 1) Alford consented to the publication of the statements, 2) the League had a qualified privilege because of the common interest in the subject matter of the statements, 3) Alford failed to give proper notice under Utah's Governmental Immunity Act, and 4) the League had an absolute privilege to publish the statements because Alford's request for a hearing constituted a quasi-judicial proceeding. The trial court granted the League's motion for summary judgment without specifying the grounds for granting the motion.

Alford appeals claiming that the trial court improperly granted the League's motion for summary judgment and that the trial court's failure to state the grounds for its ruling constitutes reversible error.

Summary judgment should be granted under Utah R.Civ.P. 56(c) "only when it is clear from the undisputed facts that the opposing party cannot prevail." *Lach v. Deseret Bank*, 746 P.2d 802, 804 (Utah Ct.App.1987). When reviewing an appeal from summary judgment, we construe the facts and view the evidence in the light most favorable to the losing party. *Geneva Pipe Co. v. S & H Ins. Co.*, 714 P.2d 648, 649 (Utah 1986); *Lucky Seven Rodeo Corp. v. Clark*, 755 P.2d 750, 752 (Utah Ct.App.1988). "If ... we conclude that there is a dispute as to a genuine issue of material fact, we must reverse the grant of summary judgment and remand for trial on that issue." *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987).

## RULE 52(a) FINDINGS

Initially, Alford argues the trial court erred by failing to issue a brief written statement of the grounds for granting the League's motion for summary judgment because alternate grounds were argued by the League. *See* Utah R.Civ.P. 52(a).[1] We agree that under rule 52(a) the trial court is required to make a brief written statement delineating which alternative theory it accepted in granting summary judgment. However, Alford failed to object or move the trial court to correct this oversight under Utah R.Civ.P. 52(b). Failure to object below, in order to give a trial court an opportunity to cure the problem, precludes us from considering the error on appeal. *Mascaro v. Davis*, 741 P.2d 938, 944 (Utah 1987) ("matters not raised at the trial court level will not be considered by [appellate court] on appeal, particularly when the problem could have been resolved below"); *Trayner v. Cushing*, 688 P.2d 856, 857 (Utah 1984) (issues not presented to the trial court for decision are not reviewable on appeal). Therefore, we do not consider the trial court's failure to make the requisite rule 52(a) statement of the grounds for its decision on appeal.

## QUALIFIED PRIVILEGE

The League advances several grounds to support the trial court's summary judgment dismissing Alford's defamation suit. Because we find the undisputed facts in the record support the League's defense to the defamation suit of a common interest qualified privilege, we do not discuss the other defenses asserted by the League on appeal.[2]

Communications between persons who share a common interest are qualifiedly privileged and not libelous in the absence of malice. *Lind v. Lynch*, 665 P.2d 1276, 1278 (Utah 1983); *Sowell v. IML Freight*,

1. Utah R.Civ.P. 52(a) provides, in pertinent part:
 The trial court need not enter findings of fact and conclusions of law in rulings on motions, except as provided in Rule 41(b). The court shall, however, issue a brief written statement of the grounds for its decision on all motions granted under Rules 12(b), 50(a) and (b), 56, and 59 when the motion is based on more than one ground.

2. Because of our holding, we need not determine if the summary judgment could also be supported under the theories of consent, absolute privilege, or failure to comply with the Utah Governmental Immunity Act.

*Inc.*, 30 Utah 2d 446, 519 P.2d 884, 885 (1974) (communication protected by privilege when it is made bona fide about a matter in which both the writer and recipient have an interest); *Combes v. Montgomery Ward & Co.*, 119 Utah 407, 228 P.2d 272, 275 (1951) (conditional privilege exists when there is an important interest on behalf of publisher and recipient). The question of whether a communication is privileged is for a court to determine. *Dominguez v. Babcock*, 727 P.2d 362, 365 (Colo. 1986) (en banc).

The common interest shared by the Board and the League was the desire to determine the factual circumstances surrounding Alford's termination. This common interest developed as a result of Alford's insistence that the Board conduct a hearing to factually justify her termination. Alford's attorney requested "all particulars of the [employee] statements or testimony and all particulars of any other information, whether written or verbal, which the League will present to its board in support of its termination decision." In a subsequent letter, he emphasized that this detailed information was essential to "give the Board adequate information upon which to base its decision." It was Alford's demand for detailed factual statements from co-workers to support what she claimed were the conclusory grounds stated in her termination notice which in fact led to the publication of the allegedly defamatory statements to the Board.

Alford, in order to circumvent this qualified privilege of common interest, must show that these allegedly defamatory employee statements were published maliciously. *Lind*, 665 P.2d at 1279; *Direct Import Buyers Ass'n v. KSL, Inc.*, 538 P.2d 1040, 1042 (Utah 1975). "The malice which plaintiff must show in order to overcome a conditional privilege is simply an improper motive such as a desire to do harm or that the defendant did not honestly believe his statements to be true or that the publication was excessive." *Id.* Ordinarily, the question of whether the statements were maliciously published would be one for a trier of fact. However, where plaintiff has failed to produce any evidence that the publication was made with malice,

summary judgment may be entered. *Lind*, 665 P.2d at 1279; *Williams v. Standard–Examiner Publishing Co.*, 83 Utah 31, 27 P.2d 1, 17 (1933).

■ Alford failed to produce any facts which demonstrate malice on the part of the League. On appeal, Alford merely makes the conclusory claim that the employee statements demonstrate malice toward Alford on their face; that is, the content of the statements demonstrate the League employees' ill will and resentment toward Alford. Alford's focus is misdirected. In determining malice with respect to a qualified privilege defense, the focus is not on whether the content of the statements were malicious, but whether they are maliciously published. *See Lind*, 665 P.2d at 1279.

Alford, through her attorney, sent two letters to the League requesting the information which would be provided to the Board. The letter, dated October 16, 1986, stated, in pertinent part:

> This is to make a formal request for a hearing before the Board of Directors of the Utah League of Cities and Towns at its next regularly-scheduled meeting....
>
> In addition, we would request that ... the League furnish this office with all information upon which it claims to have relied in Mrs. Alford's termination, and which it intends to present to the Board of Directors....

The second letter, dated October 23, 1986, addressed the report which was initially submitted by the League to the Board and stated, with our emphasis:

> The report itself, while it characterizes Mrs. Alford's termination as "an emergency response to a critical situation" does not name a single co-worker, *nor describe a single* event, to justify the charges of "insubordination".[sic] Not only, therefore, is the report unresponsive to my prior letter, it *does not give the Board adequate information upon which to base its decision regarding a further hearing* ....

These letters clearly show that Alford requested all information, including the requested factual statements of co-workers, be provided to the Board in order to enable

the Board members to prepare for the hearing. Furthermore, voluminous affidavits filed in support of the League's motion for summary judgment establish that the employee statements were provided to the Board only so its members would have the information relating to her termination that Alford had requested.

Alford's only attempt to refute these affidavits is the affidavit of Thomas Melloy, an attorney representing her at the hearing on October 24, 1986. In his affidavit, Melloy states that he did not verbally consent to the providing of the employee statements to the Board. However, he does not claim he objected to the Board receiving the employee statements even though he was present and heard a Board member request a copy of them. Furthermore, he does not dispute that Alford's prior attorney requested in writing that this information be collected for the Board's use.

 The undisputed evidence in the record demonstrates that the publication of the employee statements resulted from the request of Alford, were honest responses to her request, and were distributed only to the Board members who would consider her appeal. We conclude that the communications between the League and the Board shared the common interest of the investigation of the reasons for Alford's termination and the communications were not maliciously published since they were provided to the Board at the request of Alford to allow the Board to consider her appeal. Based upon the foregoing, we affirm the summary judgment granted by the trial court.[3]

DAVIDSON and BENCH, JJ., concur.

---

[3] Both parties quoted extensively from depositions in support of, and in opposition to, the motion for summary judgment which is the subject of this appeal. The parties also use the depositions to support certain factual sections in their briefs on appeal. After reviewing the record, we find that no depositions were filed with the district court. In resolving an appeal, an appellate court may not consider depositions which have not been filed with the district court. *Reliable Furniture Co. v. Fidelity & Guar. Ins. Underwriters, Inc.,* 14 Utah 2d 169, 380 P.2d 135, 135 (1963); *English v. Kienke,* 774 P.2d 1154, 1156 n. 1 (Utah Ct.App.1989), *cert. granted,* 779 P.2d 688 (1989); *see also Daiflon, Inc. v. Allied Chem. Corp.,* 534 F.2d 221, 226–27 (10th Cir.1976) (court on appeal may not properly consider depositions not filed with district court).