Brenda Major WEBER, Plaintiff
and Appellant,

v.

SNYDERVILLE WEST, et al.,
Defendants and Appellees.

No. 890599–CA.

Court of Appeals of Utah.

Oct. 19, 1990.

Robert F. Orton (argued), Virginia Curtis Lee, Marsden, Orton & Cahoon, Salt Lake City, for plaintiff and appellant.

Richard A. Rappaport (argued), William B. Wray, Jr., Cohne, Rappaport & Segal, P.C., Salt Lake City, for defendants and appellees.

Before BENCH, GARFF and ORME, JJ.

OPINION

ORME, Judge:

This is an appeal by plaintiff Brenda Major Weber[1] challenging interlocutory

---

1. This action was originally brought by Steven W. Major, personal representative of the estate of Robert W. Major, Jr. During the course of the litigation Steven W. Major died and the

and final orders setting aside a default judgment in favor of plaintiff and dismissing defendant Snyderville West ("Snyderville") as a party to an action to quiet title to real property. This appeal primarily focuses on the sufficiency of service of process on Snyderville.

## FACTS

On April 6, 1983, Steven W. Major filed a complaint to quiet title to eleven parcels of real estate located in Summit County. Snyderville, a Utah general partnership, and Jim Gaddis were two of seventy named defendants.[2] Jim Gaddis holds a ten-percent interest in Snyderville and is its managing partner.

In 1978, Snyderville purchased from Investor Associates a portion of the property at issue in the quiet title action. Robert W. Major executed the pertinent real estate contract on behalf of Investor Associates. Snyderville took possession of the property and made timely payments, with the final payment being made on July 20, 1983. In October 1983, Snyderville recorded a warranty deed for the property given to it by Investor Associates. Snyderville paid property taxes on the parcel through October 1987, when it learned that the trial court had divested it of title by means of a default judgment against it.

From the time it took possession of the subject property in 1978, Snyderville's address had been correctly listed as Gaddis's office address on the Summit County tax records.

No filing in the appropriate county or state offices revealed the name of any individual affiliated with Snyderville nor did Snyderville have a telephone directory listing. Although Gaddis was served in his individual capacity at his office on May 11, 1983, the summons served upon him was directed to him individually and made no

reference to Snyderville except in the lengthy caption listing all seventy defendants. The return of service indicated that Gaddis had been served personally and did not purport that service on Snyderville had been effected through him. By order dated December 17, 1983, the trial court allowed service by publication upon Snyderville and sixteen other named defendants.

As a corollary to service by publication, counsel for Weber prepared a summons for mailing to Snyderville at its tax address, i.e., Gaddis's office at 1253 East 2100 South in Salt Lake City.

The affidavit of mailing listed Snyderville's address as "1253 East 7100 South," incorrectly stating the south coordinate by fifty blocks. Although there is no such address, and, according to a Postal Service supervisor's affidavit, the summons directed to Snyderville should have been returned by the Postal Service, counsel for Weber did not recall that the summons had been returned, although other summonses were returned for insufficient postage. The Postal Service does not keep records of returned first class mail and it is therefore unknown if the mailed summons ever reached Snyderville. Gaddis had no recollection of receiving a summons through the mail.

The trial court entered a default judgment against Snyderville on August 29, 1985. In the fall of 1988, Snyderville sought to have the judgment set aside. The district court determined that there was "no adequate explanation ... [for the] failure to personally serve Snyderville West at its known tax address" and set aside the judgment. In 1989, Snyderville filed a Motion to Dismiss premised on Utah R.Civ.P. 12(b)(5) and 12(b)(6), which was granted. This appeal followed.

On appeal, Weber claims that Snyderville was effectively served through personal

---

present plaintiff was named as successor personal representative.

**2.** As may be expected in litigation involving numerous parties and several transactions, the facts before the court are numerous and complicated. We commend counsel for both parties

for their succinct presentation of the relevant facts. We further note that both parties' careful compliance with Utah R.App.P. 24 has assisted the court in efficiently deciding the matters before it. Of particular assistance to the court were the comprehensive addenda of key documents annexed to the briefs.

service upon Jim Gaddis or, alternatively, that it was properly served by publication. Weber also challenges the court's order of dismissal in favor of Snyderville as improper under Utah R.Civ.P. 52(a).[3]

## PERSONAL SERVICE

■ Weber asserts that Gaddis's position as managing partner of Snyderville qualified him to receive service of process for Snyderville. Weber further claims that service upon Gaddis automatically perfected service upon Snyderville by virtue of his position as managing partner and his status as a partner. We agree that Gaddis was authorized to receive process for Snyderville. See Utah R.Civ.P. 4(e)(5) (service upon a partnership shall be effective through service upon managing or general agent). However, personal service upon Gaddis did not confer jurisdiction over Snyderville. Weber incorrectly focuses on Gaddis's capacity, rather than the import of the summons served upon him. Any number of agents or partners of Snyderville might be authorized to receive service for the partnership, yet if no service is ever attempted on the partnership no service on it can be perfected.[4]

Rule 4(c) of the Utah Rules of Civil Procedure states, with our emphasis: "The summons shall contain the ... names ... of the parties to the action ... [and] *be directed to the defendant."* Gaddis's summons was directed to him, not to Snyderville. While this might have provided Snyderville with constructive or even actual knowledge of the action, the insufficiency of process is not thereby cured. *See Stone v. Hicks,* 45 N.C.App. 66, 262 S.E.2d 318, 319 (1980) (where one defendant received a summons directed to another defendant,

service was ineffective on the receiving defendant even though the caption listed him as a defendant). *See generally* 62B Am.Jur.2d *Process* § 81 (1990). We hold that service of process upon Jim Gaddis in his individual capacity did not effect service of process upon, nor confer jurisdiction over, Snyderville.

## SERVICE BY PUBLICATION

■ Rule 4(f)(1) of the Utah Rules of Civil Procedure, in effect at all times pertinent to this case,[5] authorized service by publication when personal service is impractical because the

> person upon whom service is sought resides outside of the state, or has departed from the state, or cannot after due diligence be found within the state....
>
> The party desiring service of process by publication shall file a motion verified by the oath of such party or someone in his behalf for an order of publication. It shall state the facts authorizing such service and shall show the efforts that have been made to obtain personal service within this state.... The court shall hear the motion ex parte and, if satisfied that due diligence has been used to obtain personal service within this state, or that efforts to obtain the same would have been of no avail, shall order publication of the summons in a newspaper having general circulation in the county in which the action is pending.

Rule 4 requires the exercise of "due diligence" to locate the defendant before the court may authorize service by publication. "Due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought and which is reasonably

---

**3.** Weber also claims that, notwithstanding any deficiencies in service of process, Snyderville is bound by a stipulation for settlement and the judgment entered thereon on January 17, 1986, by reason of the fact Gaddis, through his own counsel, was a party to the stipulation. We find no merit in this argument nor in Weber's lis pendens argument, raised for the first time in her reply brief.

**4.** Weber's claim that service on Gaddis was adequate to serve the partnership is belied by Web-

er's own course of conduct. If she believed Snyderville had been properly served through Gaddis there would have been no need to include it in the motion seeking leave to serve by publication, in the order authorizing publication or in the published summons, nor to undertake efforts to mail the published summons to Snyderville.

**5.** The comparable rule now appears at Utah R.Civ.P. 4(g).

calculated to do so." *Parker v. Ross,* 117 Utah 417, 217 P.2d 373, 379 (1950). *See also Carlson v. Bos,* 740 P.2d 1269, 1277 n. 13 (Utah 1987).

Counsel for Weber was faced with the task of sorting through numerous disorganized files containing Robert Major's personal and business affairs. Many documents were held by family members and former counsel. At the time of trial, counsel could not recall whether he had seen any documents specifically linking Snyderville and Gaddis or any contracts or deeds concerning the conveyance to Snyderville among the records he examined.

Snyderville first came to plaintiff's counsel's attention in a June 1982 title report showing Snyderville's interest.

In an effort to locate information he considered necessary to serve Snyderville, counsel searched in telephone directories, motor vehicle files, corporate filings in Utah and California, the County Recorder's files in Summit and Salt Lake counties, and in postal records. It is apparent, however, that Snyderville's address was set forth in the Summit county tax records pertaining to the very property in issue. Counsel's quest was apparently for the name of a particular individual tied to Snyderville through whom service upon Snyderville could be perfected. Oddly, however, no inquiry was made by counsel at the address disclosed as Snyderville's address in the tax records, of which counsel had knowledge no later than October 1983, nor was any service of process attempted on Snyderville at this address.[6] Had either been done,

Weber would readily have been able to personally serve Snyderville through Gaddis, whose office was the very address stated in the tax records.

■ A plaintiff seeking authorization for service by publication on a defendant for whom an in-state address is known must, at a minimum, make inquiry at that address. *Cf. Downey State Bank v. Major–Blakeney Corp.,* 545 P.2d 507, 509 (Utah 1976) (plaintiff need not exhaust all possibilities where there is an effort to serve defendant at the only address reasonably known). This requirement is not only a prerequisite for satisfying the due diligence prong of Rule 4, but will also go a long way in establishing a proper factual record upon which the court may base its order for service by publication. Service by publication is inappropriate where no personal inquiry is made at a last known address within the state.[7] Since service by publication on Snyderville was not warranted, such service was not sufficient to confer jurisdiction over Snyderville. *See Hustace v. Kapuni,* 6 Haw.App. 241, 718 P.2d 1109, 1116 (1986) (where service by publication is insufficient, subsequent default judgment is void ab initio).

## DISMISSAL

■ The thrust of Weber's challenge of the ultimate dismissal of the complaint as against Snyderville is that the court failed to "issue a brief written statement of the ground for its decision," as is required on all motions granted under Rules 12(b), 50(a) and (b), 56 and 59 "when the motion is

---

6. Apparently counsel thought that unless he could advise the constable of the name and title of a particular person through whom Snyderville could be served, he could not appropriately seek service of Snyderville at the address of which he was aware. A personal visit to the address would presumably have elicited such information. But such information is not necessarily required. Had counsel simply advised the constable to serve Snyderville at its known address, by and through any "managing or general agent, or other agent authorized to receive service of process....," Utah R.Civ.P. 4(e)(5), one of two things would have happened, either of which would have served counsel's purposes. The return would have come back indicating service was effected on Snyderville by and through its managing partner, Jim Gaddis, in which event personal service would be complete, or the return would have come back with an "unable to serve" notation, with explanation of the constable's failure to locate at the address any person having knowledge of Snyderville despite diligent inquiry, in which event the entitlement to serve by publication would be ironclad given the extensive other efforts exerted by counsel.

7. We note that any defendant served by publication has standing to challenge the sufficiency of service of process, *Carlson,* 740 P.2d at 1271, even where authorized by an order which, as here, is not directly attacked.

based on more than one ground." Utah R.Civ.P. 52(a). Weber points out that Snyderville advanced arguments for dismissal under both Rule 12(b)(5) and 12(b)(6) and therefore Rule 52(a) is applicable. We agree, noting however that Weber did not raise this issue below.

In *Alford v. Utah League of Cities and Towns*, 791 P.2d 201, 204 (Utah Ct.App. 1990), we held that failure to protest the trial court's apparent noncompliance with Rule 52 at the trial level precludes consideration of the omission on appeal.[8] Weber should have raised the issue with the trial court, thereby giving the court the opportunity to cure the problem.

■ We may affirm the trial court on any proper ground. *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988). Thus, if dismissal in this case can be sustained either on Rule 12(b)(5) or 12(b)(6) grounds, we will affirm. *Cf. Burnett v. Utah Power & Light Co.*, 797 P.2d 1096 (Utah 1990) (where trial court did not identify reason for dismissal, Supreme Court assumed dismissal was premised on one or both of the grounds advanced in motion to dismiss and affirmed after considering only one of those grounds, and determining it was well-taken).

Weber has limited her argument on dismissal insofar as premised on Rule 12(b)(5) to an incorporation by reference of her arguments that Snyderville was sufficiently served either through personal service on Gaddis or by publication. We have treated these arguments above and found both to be without merit. Given the limited scope of Weber's 12(b)(5) argument, it fol-

lows that the order of dismissal should be affirmed.

## CONCLUSION

Because Snyderville West was not properly served either personally or by publication, the default judgment entered against it was properly set aside. Because Weber has raised no argument demonstrating error in dismissal on Rule 12(b)(5) grounds, the order of dismissal will not be disturbed.

Affirmed.

BENCH and GARFF, JJ., concur.

---

**8.** Without minimizing the importance of the written statement required by Rule 52(a), which acquaints both the parties and any reviewing court of the trial court's rationale, we note that even if the plaintiff had raised the issue of a written statement of grounds before the trial court and the court had not filed its written statement as required by Rule 52(a), we would likely conclude that the omission was harmless error. *Cf. Burnett v. Utah Power & Light Co.*, 797 P.2d 1096 (Utah 1990) (where trial court did not identify reason for dismissal, Supreme Court assumed dismissal was premised on one or both of the grounds advanced in motion to dismiss and affirmed after considering only one

of those grounds, and determining it was well-taken); *Taylor v. Estate of Taylor*, 770 P.2d 163, 168 (Utah Ct.App.1989) (where trial court did not state basis for judgment, appellate court considered grounds advanced in motion for summary judgment and affirmed upon concluding judgment was properly premised on one of such grounds); *Dover Elev. Co. v. Hill Mangum Investment*, 766 P.2d 424, 426 n. 4 (Utah Ct.App. 1988) (where trial court did not state basis for judgment on stipulated facts, appellate court noted similarity to cross-motions for summary judgment and merely noted that "a 'brief written statement of the ground' for the court's disposition would have been appropriate").