Charles BUSH, Cliff Schroeder, James Ye-
ros, Dennis Fish, Moreno Giannasi, Pa-
tricia Giannasi, and I. Leroy Likes, Peti-
tioners,

v.

Kent WINKER, Respondent.

No. 94SC363.

Supreme Court of Colorado,
En Banc.

Nov. 20, 1995.

Rehearing Denied Dec. 11, 1995.

Bader & Villanueva, P.C., Gerald L. Bader, Jr., Randolph S. Dement, Denver, for Petitioners Charles Bush, James Yeros, Dennis Fish, Moreno Giannasi, Patricia Giannasi, and I. Leroy Likes.

Clifton P. Schroeder, P.C., Clifton P. Schroeder, Denver, for Petitioner Cliff Schroeder.

Robinson, Waters, O'Dorisio and Rapson, P.C., Peter A. Robinson, Martha J. Bohling, Denver, for Respondent.

Chief Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the decision by the court of appeals in *Bush v. Winker*, 892 P.2d 328 (Colo.App.1994), *as modified on denial of reh'g* (May 19, 1994), reversing the default judgment entered by the trial court in favor of the petitioners, Charles Bush, Cliff Schroeder, James Yeros, Dennis Fish, Moreno Giannasi, Patricia Giannasi, and I. Leroy Likes, and against the respondent, Kent Winker. We affirm the decision of the court of appeals.

## I.

The petitioners brought an action against numerous individuals, partnerships, and corporations to recover losses they incurred after investing in a limited partnership. The defendants included the general partnerships of Wins–Quince, Mid–America Resources (MAR), and C & I Partnership (C & I). Kent Winker was named as a defendant, both individually and as a general partner of Wins–Quince and G & W Partnership (G & W). G & W was designated as a general partner of MAR, and MAR also was named as a defendant. The case proceeded to trial on several individual claims [1] asserted by the petitioners against Winker, and a jury verdict was entered against him in the amount of $23,750 for aiding and abetting a breach of fiduciary duty. Winker did not appeal this verdict.

Before the trial, the petitioners had filed a motion for default judgment against C & I, Wins–Quince, and MAR based on those partnerships' failure to file answers to the complaint. After the trial, the petitioners amended the motion, requesting that joint and several judgment be entered against the partnerships, and against Winker individually. The amended motion also requested that petitioners be able to execute against Winker's non-partnership assets for the judgments against the partnerships if the petitioners were unable to obtain satisfaction from the partnerships.

The trial court held an evidentiary hearing on these motions on October 23, 1991. Winker appeared at this hearing through counsel, who objected to the entry of a default judgment against the separate property of Winker. Pursuant to this hearing, the trial court entered joint and several judgment on June 10, 1992, against C & I, Wins–Quince, and MAR in the amount of $453,497.54. The court further ordered that the judgment be enforceable against the separate property of Winker, including G & W assets, upon a showing that the assets of C & I, Wins–Quince and MAR did not satisfy the judgment.[2]

1. The complaint alleged several causes of action against Winker: securities fraud violations, common law fraud, breach of fiduciary duty, fraud for failure to disclose, conversion, and civil conspiracy.

2. The order states in pertinent part:
   (1) Default judgment is hereby entered in favor of Plaintiffs Charles Bush, Cliff Schroeder, James Yeros, Dennis Fish, Moreno Giannasi, Patricia L. Giannasi and I. Leroy Likes and against Defendants Mid–America Resources, Wins–Quince, and C & I Partnership, jointly and severally....
   ....
   (3) That Plaintiffs' judgment shall be enforceable against the separate, individual property of Defendant M. Kent Winker upon showing partnership assets do not satisfy the judgment.

In a separate order, the trial judge held that Winker was a general partner in MAR and G & W and also held that G & W was a partner in C & I and Wins–Quince. The court then concluded that because Winker was served with a copy of the summons and the complaint, Wins–Quince, C & I, and MAR were also properly served. The court also held that G & W was a named party in the suit because the caption of the complaint stated that Winker was being sued as a partner in G & W.

On August 6, 1992, Winker filed a motion in the trial court requesting that it set aside its orders pursuant to C.R.C.P. 60(b). Thereafter, on September 18, 1992, Winker filed a notice of appeal before the trial court could rule on the post-judgment motion. The court of appeals then remanded the case to allow the trial court to rule on the motion. On October 21, 1993, the trial court denied the motion and granted a motion filed by the petitioners ordering that a separate judgment be entered against Winker in a specified amount in accordance with the court's previous orders regarding default judgment.[3]

On November 2, 1993, Winker and G & W filed a notice of appeal. Wins–Quince, MAR, and C & I did not appeal. The court of appeals denied a motion by Winker and G & W to consolidate this appeal with the notice of appeal filed by Winker alone on September 18, 1992. The court of appeals then reversed the trial court's order pursuant to the first appeal and dismissed the second appeal with prejudice for mootness.

In reversing the trial court's order, the court of appeals first rejected the petitioners' claim that the court of appeals lacked jurisdiction over the appeal. The court held that jurisdiction was proper because Winker was substantially aggrieved by the order regarding the default judgment against the partnerships and thus had standing to challenge those rulings.

The court next held that G & W was not a named party defendant, and that Winker therefore could not be held liable through G & W for the judgment against C & I and Wins–Quince. Additionally, the court held that C & I and Wins–Quince were not served properly, and the default judgments against these entities were therefore void. Finally, the court of appeals held that the trial court's factual findings regarding Winker's legal relationship with MAR were unclear. The court therefore remanded for an evidentiary hearing on this issue.

## II.

The petitioners first contend that the court of appeals erred in determining that it had jurisdiction to consider arguments advanced by Winker on behalf of the partnerships named in the default judgment of June 10, 1992, and in reversing the judgments against them because those partnerships did not file a notice of appeal. Winker argues that he had standing to appeal because he was substantially aggrieved. Winker further argues that once he had standing to appeal the default judgment against the partnerships, he was entitled to argue any applicable grounds for reversal on appeal, and therefore was advancing arguments on his own behalf rather than on behalf of the partnerships.

We agree with Winker. A non-party has standing to appeal an order of the trial court following entry of final judgment if it appears that the non-party was substantially aggrieved by the order. *Roberts–Henry v. Richter,* 802 P.2d 1159, 1161 (Colo.App.1990). Once the non-party has appealed the order, it is axiomatic that he may substantively advocate reversal of the order. To hold otherwise would render the standing granted by the *Richter* rule meaningless.

In the instant case, Winker was a party to the initial action in the trial court. He is a non-party to the order at issue because judgment was entered primarily

3. The order states in pertinent part:
   Upon Plaintiffs' Renewed Motion For Order Directing Clerk To Enter Judgment Against M. Kent Winker and Showing Regarding Partnership Judgment, the Court hereby directs that the following judgment shall enter:

   1. Name of party in whose favor judgment is granted: Charles Bush
   2. Name of Party against whom judgment is entered: M. Kent Winker.... (The same language is contained in each plaintiff's judgment against Winker).

against the partnerships, and against Winker only if the partnerships did not satisfy the judgment. Hence, Winker may only appeal that order if he was substantially aggrieved thereby. The language of the order itself indicates that Winker was substantially aggrieved by the default judgment against the partnerships, because it created a conditional liability for Winker, maturing into an enforceable obligation if the partnerships did not satisfy the judgment.[4] Thus, applying the rule articulated in *Richter*, Winker is entitled to appeal that order, and the court of appeals therefore had jurisdiction to consider the merits of Winker's arguments advocating reversal.

### III.

The petitioners next assert that the court of appeals erred by holding that, because G & W was not named as a defendant in the petitioners' Second Amended Consolidated Complaint, G & W was not a party defendant. The petitioners argue that even though G & W was not specifically named as a defendant, the fact that the complaint named Winker individually and as a general partner of Wins–Quince and G & W should have been sufficient for the trial court to obtain jurisdiction over G & W as a party defendant. Winker maintains that because the complaint makes no reference to G & W as a defendant at any time, nor makes a single claim against G & W, the trial court may not exercise jurisdiction over G & W as a party defendant.

■■■ We agree with Winker that the reference in the complaint to G & W was insufficient to provide notice to G & W that it was being haled into court as a party defendant. The very purpose of pleading is to inform the adverse party of the cause of action so as to provide it with the opportunity to prepare for and defend against the action at trial. *Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102, 1105 (Colo.App.1990); *Soden v. Mur-*

*phy*, 42 Colo. 352, 356, 94 P. 353, 354 (1908). With regard to drafting a complaint against a partnership, "[a] partnership may be sued either in its common name or by naming its partners." *Frazier v. Carlin*, 42 Colo.App. 226, 228, 591 P.2d 1348, 1350 (1979); *see also* § 13–50–105, 6A C.R.S. (1987) (providing that a partnership may be sued in its common name).

In the case at bar, the petitioners' Second Amended Consolidated Complaint did not meet the required standard to provide notice to G & W that it was the subject of a cause of action. Although the caption of the complaint names Winker as an individual and as a general partner of Wins–Quince and G & W, it neglects to name the partnership itself or to name all of its partners.[5] Moreover, nowhere in the body of the complaint does the petitioner refer to G & W as a defendant. Although the complaint sets forth sixteen claims for relief, there is no specific reference to G & W in any of the claims. The court of appeals aptly noted:

> While certain claims are asserted against "all defendants," there is no allegation to alert the reader that G & W is for some reason included in this group.... The summons and complaint fail to indicate that a claim has been made against G & W as a separate entity, and it is undisputed that all of the partners of G & W have not been named as defendants.

*Bush v. Winker*, 892 P.2d at 331.

We therefore hold that because the complaint was insufficient to provide notice to G & W that it was a party defendant to the action, the trial court had no jurisdiction over G & W and the judgment entered against G & W is thus void. We further hold that to the extent liability is predicated on the judgment against G & W, Winker's obligations under that judgment are also void.

4. Section 13–50–105, 6A C.R.S. (1987), provides that "the separate property of any individual member thereof who is named as a party individually and over whom individually the court has acquired jurisdiction either by entry of appearance or by service of process may be bound by the judgment therein."

5. Although Winker is named, the other partner, John Gardner, is not mentioned anywhere in the complaint.

## IV.

The petitioners next contend that the court of appeals erred by holding that C & I and Wins–Quince were not properly served when the petitioners served them with a summons that designated Winker as a defendant, both in his individual capacity and as a general partner of G & W and Wins–Quince. The petitioners assert that Winker was served as a partner of G & W, and because G & W was a partner of C & I and Wins–Quince at the time of service, those entities were properly served when the summons was delivered to Winker.

■ Winker argues that serving him with a single copy of the summons and complaint did not constitute service on C & I and Wins–Quince. Winker contends that because he had no notice that service on him was to constitute service on G & W as a partner in C & I and Wins–Quince, service was not properly effected, and the court of appeals correctly found that the trial court did not have jurisdiction over C & I or Wins–Quince. Moreover, Winker points out that he was not a partner in Wins–Quince at the time of service.

We agree with the court of appeals that C & I and Wins–Quince were not properly served. The purpose of the requirement for serving process and a copy of the complaint upon a defendant is to give the defendant notice of the commencement of the proceedings in order to enable that party to attend and prepare a defense. C.R.C.P. 4(e)(4); *Swanson v. Precision Sales & Serv., Inc.,* 832 P.2d 1109, 1111 (Colo.App.1992). C.R.C.P. 4(e)(4) provides that a partnership may be served by

delivering a copy thereof to one or more of the partners or associates, or a managing or general agent thereof. . . .

Thus, the question before us is whether the summons served upon Winker designating him (1) as an individual, (2) as a partner of G & W, and (3) as a partner of Wins–Quince, put him on notice that the petitioners were serving him not only individually and as a partner of G & W, but were also serving G & W as a partner of Wins–Quince and C & I

as well. We hold that the summons did not provide the requisite notice.

The court of appeals cited *Weber v. Snyderville West,* 800 P.2d 316 (Utah Ct.App. 1990), *cert. denied,* 815 P.2d 241 (Utah 1991), for the proposition that when determining whether proper service was made, the focus of the inquiry must be upon the summons actually served rather than the relationship between the parties. *Id.* at 318. We believe the rule set forth in *Weber* is applicable under these facts. The court of appeals discussed *Weber* as follows:

In *Weber* . . . the court had occasion to address service of process upon a partnership pursuant to Utah R.Civ.P. 4(e)(5) which is similar in content to C.R.C.P. 4(e)(4). There the complaint named as defendants Jim Gaddis and the Snyderville West partnership. Gaddis was the managing partner of the partnership. However, the summons did not designate Gaddis as the managing partner of Snyderville.

The court held that service upon Gaddis in his individual capacity was not service upon the partnership. The court recognized that the partnership had constructive or actual knowledge of the proceeding. However, the court held that the focus of its inquiry must be upon the summons actually served and not upon the relationship between Gaddis and Snyderville.

*Bush,* 892 P.2d at 332 (citing *Weber v. Snyderville West,* 800 P.2d 316, 318 (Utah App. 1990)). We believe the reasoning in *Weber* to be sound and equally applicable to the instant case.

We hold that serving Winker with a summons designating him individually, as a partner in G & W, and as a partner in Wins–Quince was not sufficient to effect service upon G & W as a partner in C & I and Wins–Quince. The summons served upon Winker was simply not sufficient to put him on notice that the petitioners intended to serve G & W as a partner in Wins–Quince and C & I. Additionally, the summons was misleading because it designated Winker as a partner in Wins–Quince when he was not a partner in that entity at the time of service. Thus, we conclude that the default judgment against C & I and Wins–Quince must be vacated. Con-

sequently, the separate judgment entered against Winker based upon the judgments against C & I and Wins–Quince must also be set aside.

## V.

The petitioners alternatively contend that if service upon Winker was not sufficient to effect service on C & I and Wins–Quince, then proper service was effected on those entities by service upon three other individuals: Jarl Brey, Gary Brey, and Ronald McDonald. Winker, while conceding that those three individuals were served with process at various times, asserts that such service was ineffective as service upon C & I and Wins–Quince.

We affirm the court of appeals' holding that any service upon Jarl Brey, Gary Brey, and Ronald McDonald did not effect proper service on Wins–Quince or C & I. We will discuss the service on each individual separately.

### A. Service on Jarl Brey

■ Jarl Brey was served with the petitioners' Second Amended Consolidated Complaint on September 23, 1990. The complaint names both C & I and Wins–Quince as defendants, and the returns of service indicate that Jarl Brey was served as a partner of C & I and Wins–Quince. Jarl Brey, however, was no longer a partner of C & I or Wins–Quince on September 23, 1990, and had no authority to accept service for the partnerships at that time. Brey's authority to accept such service terminated on January 31, 1990 upon his filing a voluntary bankruptcy petition. Brey's bankruptcy dissolved the partnerships and terminated his authority to receive service for the partnerships. § 7–60–131(1)(e), 3A C.R.S. (1986) ("Dissolution is caused ... [b]y the bankruptcy of any partner or the partnership...."); § 7–60–135(3)(b), 3A C.R.S. (1986) ("The partnership is in no case bound by any act of a partner after dissolution ... [w]here the partner has become bankrupt....").

■ As such, service on Jarl Brey could not effect service upon C & I or Wins–Quince. Bolstering this holding is the fact that Jarl Brey sold his interest in Wins–Quince on January 12, 1989, and Brey was therefore no longer a partner in Wins–Quince at the time of service and thus could not then receive service on behalf of that entity.

### B. Service on Ronald McDonald

■ Ronald McDonald's attorney, George C. Price, was served on behalf of McDonald on December 28, 1990. Price executed a waiver and acceptance of service on McDonald's behalf. We have never ruled on the question of whether service on a partner's attorney, when the partnership has not specifically designated the attorney to receive service, can constitute service on the partnership. Several jurisdictions which have ruled on this issue have held that service on a defendant's attorney will not effect service on the defendant unless that defendant has authorized the attorney to receive such service. *See, e.g., Santos v. State Farm Fire & Casualty Co.*, 902 F.2d 1092, 1094 (2d Cir.1990) ("[S]ervice of process on an attorney not authorized to accept service for his client is ineffective.") (citing 4A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1097 (2d ed. 1987)); *Leonard v. Stuart–James Co., Inc.*, 742 F.Supp. 653, 662 (N.D.Ga.1990) (holding that service is not avoided by service on a party's attorney, as service on an attorney is ineffective unless he has been authorized to accept such service). We agree with the analysis in those cases and thus adopt their reasoning. Hence, as there is no indication that Price was authorized to receive service on behalf of C & I or Wins–Quince, service on Price did not constitute service on those entities.

### C. Service on Gary Brey

■ Gary Brey was personally served on June 28, 1988. Brey, however, was served with an earlier version of the complaint which named neither C & I nor Wins–Quince as defendants. Therefore, this service was not effective as to those partnerships. The complaint was later amended to include the partnerships; however, this version of the complaint was not served on Brey, but on his attorney. As explained above, service on a

partner's attorney cannot constitute service on the partnership. Thus, neither the initial service on Brey nor the subsequent service on his attorney was sufficient to effect service upon C & I or Wins–Quince. Because there was no effective service on C & I or Wins–Quince, we conclude that the default judgment against those entities must be vacated. Consequently, the separate judgment entered against Winker based upon the judgments against C & I and Wins–Quince must also be set aside.

## VI.

The petitioner's final contention is that the court of appeals erred by holding that the trial court's factual findings regarding Winker's legal relationship with MAR were unclear and thus remanding the issue to the trial court. Winker argues that the court of appeals correctly remanded this issue for an evidentiary hearing.

The court of appeals remanded this issue because it was unable to determine from the record and from the court's order if the trial court considered whether Winker was foreclosed from presenting such testimony. After careful scrutiny of the record, we agree with the court of appeals that it is unclear whether the trial court considered testimony on the issue of Winker's relationship with MAR in making its ruling. We thus affirm the court of appeals' ruling that this issue should be remanded for an evidentiary hearing that also addresses the issue of damages to be awarded against Winker to satisfy the MAR default judgment.

## VII.

Accordingly, the court of appeals' holding reversing the judgments against C & I and Wins–Quince is affirmed. The court of appeals' holding reversing the judgments against Winker and G & W predicated upon the judgments against C & I, Wins–Quince, and MAR is also affirmed. This case is remanded for additional proceedings consistent with this opinion.

MULLARKEY, J., dissents.

Justice MULLARKEY dissenting:

The majority holds that Kent Winker (Winker) may appeal the default judgments entered against C & I Partnership (C & I), Wins–Quince, and Mid–America Resources (MAR), even though the three partnerships themselves did not appeal. The majority also holds that G & W Partnership (G & W) was not a proper defendant, and, as a result, C & I and Wins–Quince were not properly served. Accordingly, the majority upholds the court of appeals' conclusion that judgments were entered improperly against Winker and G & W. Finally, the majority remands the case to the court of appeals which has directed further proceedings with respect to MAR. I respectfully dissent.

First, the limited exception allowing a non-party to appeal a judgment does not apply to this situation, and it should not be extended to cover this case. Generally, only the parties to an action can file a notice of appeal, not a new party at the appellate stage of litigation. *People v. South Platte Water Conservancy Dist.*, 139 Colo. 503, 343 P.2d 812, 817 (1959). I agree that there is a limited exception to this general rule which allows a non-party to appeal if the non-party demonstrates that he or she is substantially aggrieved by the trial court's order or judgment, and would be left without a reasonably expeditious judicial remedy. *Miller v. Clark*, 144 Colo. 431, 432, 356 P.2d 965, 966 (1960) ("[T]o prosecute an appeal a person must either be a proper party to the action or he must be a person substantially aggrieved by the disposition of the case in the lower court."); *see also* 6 James C. Moore et al., *Moore's Federal Practice* § 203.06 (2d ed. 1985) ("[T]o appeal, a non-party must be privy to the record and aggrieved by the judgment."). In *Miller*, we refused to permit a guardian ad litem to appeal a trial court's determination of heirship, finding that the guardian ad litem was not aggrieved by the court's decision. *Miller*, 144 Colo. at 431, 356 P.2d at 965.

In the case before us, the majority holds that Winker, who was a party in the trial court, comes within the non-party exception for purposes of this appeal. According to the majority, Winker may appeal the judgments

entered against the three partnerships because he was substantially aggrieved by the ruling. *See* maj. op. at 82. I disagree with the majority's reasoning.

In my view, allowing a non-party to appeal a decision is a limited exception based on equity considerations, and it should not be expanded to include the facts of this case. *Roberts–Henry v. Richter*, 802 P.2d 1159 (Colo.App.1990), the case cited by the majority in support of its position, illustrates the limited circumstances in which the non-party exception applies. In *Roberts–Henry*, the appellant, who was allowed to appeal under the non-party exception, was the plaintiff's treating psychiatrist. Although the psychiatrist was not a party to the proceedings and did not testify at trial, she was subjected to extensive discovery by the defendant. The psychiatrist was allowed to appeal the trial court's order denying her motion for attorney's fees, costs and sanctions against the defendant. *Id.* at 1159.

The other non-party appeal cases arise in similar circumstances. For example, the court of appeals has held that an attorney is the real party in interest who may appeal C.R.C.P. Rule 11 sanctions; the client, who was the party in the trial court, is not the proper party to appeal. *Maul v. Shaw*, 843 P.2d 139 (Colo.App.1992); *see also Cerveny v. Wheat Ridge*, 888 P.2d 339, 341 (Colo.App. 1994) (collecting cases and noting that the non-party exception often involves non-parties who have been sanctioned or who have been denied costs and fees by trial courts), *cert. granted on other issues*, No. 94SC521 (Colo. Feb. 13, 1995).

The exception allowing a non-party to appeal a decision is based on notions of equity and fairness. *Tower v. Tower*, 147 Colo. 480, 364 P.2d 565 (1961). Truly compelling circumstances have moved appellate courts to provide the non-party with a full and fair opportunity to contest a final judgment. However, this case does not merit an equitable remedy. Winker participated in the initial trial as a party and had a full and fair opportunity to litigate before the court. The three partnerships against whom the judgments were entered were also parties and they did not appeal. The majority allows

Winker to appeal here because he is contingently liable for the three partnerships' judgments as an indirect partner in the three entities. If that interest is sufficient to permit him to appeal under the non-party exception, his interest is also sufficient for him to cause an appeal to be taken by the partnerships.

Thus, I would not allow Winker to appeal under the non-party exception, and would reinstate the judgments against the three partnerships.

The second issue is whether G & W was properly served. As a technical matter, I note that G & W is not a party in this appeal; only Winker is involved in this appeal. It is somewhat ironic to address the fine points of pleading and service of process in a case involving an issue that is not correctly postured for decision. G & W and Winker were parties to a second appeal which the court of appeals first refused to consolidate with this case, and then dismissed as moot after it decided this case. These rulings seem to be in error, but that issue is not before us. Nevertheless, I address the G & W issue because the majority does so.

Generally, a summons and complaint are served upon an individual to provide that person or entity with notice and the opportunity to prepare for future court proceedings. *Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102 (Colo.App.1990). A partnership may be sued in its common name or by naming its partners. *Frazier v. Carlin*, 42 Colo.App. 226, 591 P.2d 1348 (1979); *see also* § 13–50–105, 6A C.R.S. (1987). Personal service on a partnership is accomplished by delivering a copy to one or more of the partners or a managing or general agent of the partnership. C.R.C.P. 4(e)(4).

In the case before us, I believe that G & W was properly served. The caption of the complaint in this case is as follows:

KENT WINKER, individually, as officer and/or director of CCNB, and as a general partner of Wins–Quince and G & W Partnership, a general partner of Mid–America Resources.

First, proper service was effectuated against Winker. The complaint provided Winker with notice that he was being served "as a general partner of ... G & W Partnership, a

general partner of Mid–America Resources." This notice was sufficient to justify holding that G & W was properly served because Winker's notice and knowledge is attributed to G & W under the Uniform Partnership Law. § 7–60–112, 3A C.R.S. (1986); *see also* 9 Bromberg & Rubstein, *Partnerships* § 4.06 (3d ed. 1987) (general knowledge or notice exists if a single partner has knowledge or was the person notified).

The majority notes that "there is no specific reference to G & W in any of the claims." *See* maj. op. at 82. However, the petitioners asserted sixteen claims for relief against all defendants. *Id.* Moreover, the majority misconstrues the liability of G & W. G & W was named as a partner in Wins–Quince and C & I, and its liability is contingent on the failure of Wins–Quince and C & I to pay the judgments against them. Because a partnership is a legal fiction, Winker, as a general partner of G & W, was a proper party to be served. *See Erving v. Virginia Squires Basketball Club*, 349 F.Supp. 709, 711 (E.D.N.Y. 1972) (service on general manager of corporation which was the general partner of a limited partnership was effective service on the limited partnership); *Thomson v. Eastern Bechtel Corp.*, 24 F.R.D. 41, 42 (S.D.N.Y. 1959) (service on manager of corporation affiliated with another corporation was effective service on second corporation).

For these reasons, I respectfully dissent.